UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

SUSAN LLOYD,                                    :
           Plaintiff,                       :
                                            :
           v.                               :     No. 5:23-cv-2261
                                            :
MANBEL DEVCO I LP. *et al.*,                    :
           Defendants.                      :

**O P I N I O N**
**Manbel Defendants' Motion to Dismiss, ECF No. 55 – Granted in part**

**Joseph F. Leeson, Jr.**                                      **February 27, 2024**
**United States District Judge**

## I.    INTRODUCTION

The instant litigation arises out of the difficult landlord-tenant relationship between Susan Lloyd and the Eclipse at Belmont Apartments. Most of these difficulties purportedly stem from Lloyd's disability and Defendants' alleged discrimination and failure to accommodate. Since the allegations are insufficient to state violations of the Fair Housing Act ("FHA") or the Americans with Disabilities Act ("ADA"), the Motion to Dismiss filed by Defendants Manbel Devco III, LP, *d/b/a Eclipse at Belmont*, Audrey Caleca, and Caroline Schompert (collectively "Manbel Defendants") is granted in part.

## II.    BACKGROUND

The pertinent factual allegations, which are taken from the Amended Complaint, *see* Am. Compl., ECF No. 50, are as follows:

In February of 2022, Susan Lloyd entered into a lease (running from April 9, 2022, through April 8, 2023) to reside at the newly constructed Eclipse at Belmont Apartments. Am.

Compl. ¶ 16.  Defendant Manbel Devco III LP is the owner and developer of these apartments.

*Id.* ¶ 2.  Defendants Audrey Caleca and Caroline Schompert work for Manbel Devco as a leasing

agent and property manager, respectively.  *Id.* ¶¶ 4, 5.  The entirety of Lloyd's tenancy at the

Eclipse was fraught with difficulty.  Many of these difficulties are allegedly related to Lloyd's

disability.  She has been disabled "since 2006 due to multiple ongoing medical problems

including a stroke and heart problems."  *Id.* ¶ 66.  She operates a motorized scooter to help her

move around and has utilized a handicap placard for over ten (10) years.  *Id.* ¶¶ 72, 74.

Shortly after moving in, Lloyd took issue with the apartment conditions, finding them at

odds with her expectations.  While she was told the apartment complex would be smoke-free,

many residents smoke outside in the common areas or on their balconies near Lloyd's unit.  *Id.*

¶¶ 19A, 78.  The smoke aggravates her disability by causing chest pains, asthma attacks, and

shortness of breath.  *Id.* ¶ 78.  These symptoms are also aggravated by the idling of diesel trucks

owned by contractors hired by the Manbel Defendants.  *Id.*

Lloyd also takes issue with the chemicals used in landscaping the property.  The Manbel

Defendants contracted Greenscapes Landscape Construction LLC[1] to landscape the property.

Am. Compl. ¶ 79.  In the course of its work, Greenscapes "applied pesticides and other

chemicals directly outside of Lloyd's unit in violation of PA hypersensitivity law."  *Id*.  Lloyd

avers that this practice aggravates her disability and violates a host of local and state laws.  *Id.*

Lloyd avers that the sprays have exacerbated her disability and injured her service dog.  *Id.*

Lloyd further avers that her apartment and the apartment complex is not suited or

accommodating to her disability.  Her shower is in a tub which requires her to climb in and out

---

[1]    The Amended Complaint also names as defendants: Greenscapes Landscaping
Construction LLC, Lancaster County Housing Authority ("LCHA"), Benjamin Novak, and
Fowler, Hirtzel, McNulty and Spaulding.

of it. *Id.* ¶ 19C.[2]  She alleges that this is not safe with her disability and has caused her to fall

and injure herself. *Id.*  She has asked the Manbel Defendants to provide a shower seat and install

a grab bar and handheld showerhead. *Id.* ¶ 75.  However, the apartment complex explained that

Lloyd would have to pay for these modifications. *Id.*  Lloyd inquired about apartments with

walk-in showers but learned there are no one-bedroom units with a walk-in shower. *Id.* ¶¶ 67,

70.  She complains that she would have to pay more rent for a two-bedroom unit and cannot

afford those units. *Id.* ¶¶ 67, 70.  She believes this to be against the law. *Id.*  The patio outside

Lloyd's unit also has a step off, rendering it inaccessible to her. *Id.* ¶ 75.  When she asked the

apartment complex to construct one, it informed her that it too would have to be done at Lloyd's

expense. *Id.*[3]

 Lloyd also complains about her front door.  As the Court understands the pleadings, the

door is opened by an electronic key fob. *Id.* ¶ 76.  However, the key fob pad is allegedly too far

from the door such that by the time she unlocks the door with the fob, she does not have enough

time to open the door before it relocks. *Id.* ¶ 19C.  That distance is made more difficult by the

packages in the way. *Id.*  Lloyd further alleges that the door "does not open with minimum

pressure as required by law[4]." *Id.* ¶¶ 19C, 76.

Lloyd alleges that the sidewalks at the apartment complex are, at times, obfuscated by

construction equipment, forcing her to use a drop off which her mobility scooter cannot navigate.

*Id.* ¶ 19C.  She further complains there is no sidewalk connecting the apartment complex to the

---

[2]     The references to paragraph 19 in this section refer to the first paragraph 19 in the
Amended Complaint at pages 9-26, not to the second paragraph 19 at page 48.

[3]     The apartment complex has not been altogether unaccommodating.  It installed one bar at
no charge to Lloyd. Am. Compl. ¶ 19C.  It also installed a handicap ramp near her unit, but
Lloyd avers the complex allows dogs to defecate and urinate on it, thereby limiting its use to her.
*Id.*

[4]     Lloyd does not specify which law.

neighboring shopping center, which is also owned by Defendant Manbel Devo, and she is forced to drive her scooter on the road.  *Id*. ¶ 77.

Other difficulties of which Lloyd complains are unrelated to her disability.  She avers that the apartment complex advertises itself as containing noise dampening concrete construction, yet she can hear her neighbors using the bathroom, talking, and the like.  *Id.* ¶ 19B.  Lloyd complains that her neighbors walk their dogs up to her bedroom window and patio, allow the dogs to defecate next to her handicap ramp, and do not pick up the dog feces.  *Id.* ¶ 88.  Lloyd avers that Defendants allow this behavior.  *Id.*

Lloyd avers that after she relayed these complaints to the Manbel Defendants, they retaliated by refusing to renew her lease and permitting other residents to harass her by "throwing objects towards [her] bedroom windows late at night, coming onto [her] patio and looking into [her] windows, recording [her] inside her unit, etc."  *Id.* ¶¶ 85, 88.  Lloyd alleges that the Manbel Defendants effectively evicted her, resulting in her moving out of the apartment in February of 2023, and then thereafter refused to renew her lease.  *Id.* ¶ 19C.  In a section titled "constructive eviction," Lloyd alleges that Defendants made the conditions so intolerable that she was forced to leave her rental, citing specifically to "the smoking issues, the ongoing constructions, other material defects of the property," the "unsanitary condition with trash," "never making the property or Lloyds [sic] unit accessible and allowing their own tenants to stalk and harass Lloyd."  *Id.* ¶ 41.  Lloyd concludes that the Manbel Defendants refused to renew her lease because of her complaints about the property.  *Id.* ¶ 99.

Lloyd asserts fifteen (15) claims, many of which are inconsistently labeled, rendering the Amended Complaint difficult to organize.[5]  In the cause of action under the heading "Count I", Lloyd asserts fraud against Lancaster County Housing Authority ("LCHA").  In the cause of action under the heading "II", Lloyd asserts negligent and/or fraudulent misrepresentation against Manbel Devco III, Caleca, and Schompert.  In the cause of action under the heading "Count II", Lloyd asserts negligent and/or fraudulent misrepresentation against LCHA.  In the cause of action under the heading "III", Lloyd asserts violations of the Unfair Trade Practices and Consumer Protection Law against Manbel Devco III and LCHA.  In the cause of action under the heading "Count IV", Lloyd asserts negligence/gross negligence against Manbel Devco III, Caleca, Schompert, Greenscapes Landscaping, and LCHA.  In the cause of action under the heading "V", Lloyd asserts public and private nuisance against Manbel Devco III, Caleca, Schompert, and Greenscapes Landscaping.  In the cause of action under the heading "VI", Lloyd asserts causes of action arising under Titles III and V of the Americans with Disabilities Act ("ADA") and the Fair Housing Act ("FHA") against Manbel Devco III, Caleca, and Schompert. *See* Compl. Pp. 72-93.  In the cause of action under the heading "VII", Lloyd asserts abuse of process against Manbel Devco III, Benjamin Novak, and Fowler, Hirtzel, and Spaulding.  In the cause of action under the first heading "IX," Lloyd asserts a claim for constructive eviction.  In the cause of action under the first heading "X," Lloyd asserts a claim for breach of contract.  In the cause of action under the heading "VIII," Lloyd asserts a claim for negligent and intentional

---

[5]      The paragraphs comprising Count VI are lengthy and contain various sets of facts in contravention of Rule 10 of the Federal Rules of Civil Procedure, rendering the Amended Complaint difficult to construe. *See* Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.").  Nevertheless, the Court has an "obligation to construe a *pro se* litigant's pleadings liberally." *Capogrosso v. The Supreme Ct. of New Jersey*, 588 F.3d 180, 184 n.1 (3d Cir. 2009).

infliction of emotional distress against Manbel Devco III.  In the cause of action under the

second heading "IX," Lloyd asserts a violation of "PA Hypersensitivity Laws" against Manbel

Devco III, Creations Landscaping, and Greenscapes Landscaping.  In the cause of action under

the second heading "X," Lloyd asserts violations of the Pennsylvania Human Relations Act

against Manbel Devco III, Caleca, and Schompert.  In the cause of action under the heading

"XI," Lloyd asserts breach of warranty of habitability against Manbel Devco III, Caleca, and

Schompert.

Lloyd asserts that this Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal

question) and 28 U.S.C. § 1343(a)(4).  The Manbel Defendants filed a Motion to Dismiss[6], *see*

ECF No. 55, arguing that Lloyd's Amended Complaint is legally insufficient as it merely lists

various issues with her former tenancy supported only by vague legal conclusions. The Court

agrees with respect to the claims brought in Count VI and offers no opinion at this time

regarding the remaining claims.  Count VI of the Amended Complaint is dismissed with

prejudice as to the ADA claims and without prejudice as to the FHA claims.  Since Lloyd will be

given an opportunity to amend her complaint, which will moot the remaining Motions to

Dismiss, they will also be dismissed at this time without prejudice to be refiled within twenty

(20) days of service of a second amended complaint or, if a second amended complaint is not

filed, within twenty (20) days of the entry of an order addressing supplemental jurisdiction[7] on

the remaining claims in the Amended Complaint.

---

[6]     Also pending are Motions to Dismiss filed by Defendants Lancaster County Housing
Authority, *see* ECF No. 54, and by Benjamin Novak, and Fowler, Hirtzel, McNulty and
Spaulding, *see* ECF No. 53.  Default was entered against Greenscapes Landscaping Construction
LLC for failing to respond to the original Complaint.  However, because the Amended
Complaint was never served on Greenscapes Landscaping Construction LLC, default will be
vacated.

[7]     The FHA and ADA claims in Count VI present the only federal causes of action.

### III.     LEGAL STANDARDS

### A.          Motion to Dismiss – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.  *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted).  The defendant bears the burden of proving that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

B.        **Fair Housing Act – Review of Applicable Law**

"The Fair Housing Act ('FHA'), passed by Congress as Title VIII of the Civil Rights Act

of 1968, prohibits housing discrimination on the basis of, *inter alia*, race, gender, and national

origin." *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005).  The 1988

Fair Housing Amendments Act ("FHAA") extended the FHA's coverage to include persons with

disabilities.  *Id.*  Section 3604 of the FHA makes it unlawful to:

> [D]iscriminate against any person in the terms, conditions, or privileges of sale or
> rental of a dwelling, or in the provision of services or facilities in connection with
> such dwelling, because of a handicap of:
>
>> (A) that person; or
>>
>> (B) a person residing in or intending to reside in that dwelling after it is so
>> sold, rented, or made available; or
>>
>> (C) any person associated with that person.

42 U.S.C. § 3604(f)(2).  Section 3604 includes as discrimination:

> (A) a refusal to permit, at the expense of the handicapped person, reasonable
> modifications of existing premises occupied or to be occupied by such person if
> such modifications may be necessary to afford such person full enjoyment of the
> premises except that, in the case of a rental, the landlord may where it is reasonable
> to do so condition permission for a modification on the renter agreeing to restore
> the interior of the premises to the condition that existed before the modification,
> reasonable wear and tear excepted.
>
> (B) a refusal to make reasonable accommodations in rules, policies, practices, or
> services, when such accommodations may be necessary to afford such person equal
> opportunity to use and enjoy a dwelling

*Id*. § 3604(f)(3)(A)-(B).  FHAA claims tend to fall into three categories: (1) intentional

discrimination/disparate treatment claims; (2) disparate impact claims; and (3) reasonable

accommodation/modification claims.  *Coyne v. Holy Fam. Apartments*, No. CV 19-4583, 2020

WL 2063475, at *5 (E.D. Pa. Apr. 29, 2020).  "Generally, to prevail on a disparate treatment

claim, a plaintiff must demonstrate that some discriminatory purpose was a 'motivating factor'

behind the challenged action." *Cmty. Servs., Inc.*, 421 F.3d at 177 (quoting *Cmty. Hous. Tr. v. Dep't of Consumer & Regul. Affs.*, 257 F. Supp. 2d 208, 225 (D.D.C. 2003)).

Some courts have also recognized hostile housing environment claims.  To state such a claim, the harassment must be "sufficiently severe or pervasive as to interfere with: the availability, sale, rental, or use or enjoyment of a dwelling; or the terms, conditions, or privileges of the sale or rental."  *Glagola v. MacFann*, No. 2:22-cv-1263-NR-LPL, 2023 U.S. Dist. LEXIS 197607, at *9 (W.D. Pa. Nov. 3, 2023) (citations omitted).

Retaliation claims under the FHA are analyzed under the *McDonnell-Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  "Under the McDonnell Douglas burden-shifting framework, as applied to FHA retaliation claims, a plaintiff must first establish a prima facie case of retaliation under Section 3617 by demonstrating: (1) that [he] engaged in a protected activity; (2) that the defendants subjected [him] to an adverse action; and (3) that a causal link existed between the protected activity and the adverse action."  *Newell v. Heritage Senior Living, LLC*, No. 12-6094, 2016 U.S. Dist. LEXIS 13416, at *21 (E.D. Pa. Feb. 3, 2016).

**C.      Americans with Disabilities Act (ADA) - Title III and Retaliation – Review of Applicable Law**

"Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals."  *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001).  As a "[g]eneral rule," Title III provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

Title 42 United States Code section 12203 is the anti-retaliation provision of the ADA. That section provides: "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." *Id.* § 12203(a). ADA retaliation claims utilize the *McDonnell-Douglas* burden shifting framework. *See Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022). To establish a prima facie case of retaliation under the ADA, a claimant must show "(1) protected conduct; (2) adverse action 'either after or contemporaneous with' the protected conduct; and (3) a 'causal connection' between the protected conduct and the adverse action." *El v. People's Emergency Ctr.*, 438 F. Supp. 3d 283, 292 (E.D. Pa. 2020) (quoting *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000)).

### D.    Supplemental Jurisdiction - Review of Applicable Law

Pursuant to 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim. . . if . . . [it] has dismissed all claims over which it has original jurisdiction." "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). In deciding whether to exercise supplemental jurisdiction, the district courts should consider factors such as judicial economy, convenience, and fairness to litigants. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that "if these [factors] are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them"). The United States Supreme Court has further advised that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id*.

IV.     ANALYSIS

    A.     **The Fair Housing Act claims are dismissed without prejudice.**

        1.     **Reasonable Accommodation/Modification**

The Court begins with Lloyd's requests for apartment modifications.  Specifically, Lloyd alleges that the Manbel Defendants have discriminated against her on the basis of her disability by: 1) refusing to provide a shower seat and additional grab bars at its expense; 2) refusing to install a patio ramp at its expense; and 3) attempting to force Lloyd to pay for a more expensive apartment with a walk-in shower.  When Lloyd inquired about these modifications, she was told that she "must allow the owner to pick out [a handicap ramp] at Lloyds [sic] expense," that she "must pay 75.00 an hour for" the installation of a handheld shower head and grab bars, and that "Defendants will not install a shower seat and Lloyd must go buy one."  Am. Compl. ¶ 75.

Despite Lloyd's suggestion to the contrary, "[Section 3604(f)(3)(A)] requires a landlord or homeowners' association to *permit* such modifications by the resident, but it does not create an affirmative duty to make the modification on the resident's behalf."  *Lefkowitz v. Westlake Master Ass'n, Inc*., No. CV 18-14862, 2019 WL 669806, at *3 (D.N.J. Feb. 19, 2019) (emphasis in original).  The complaint does not allege that the Manbel Defendants refused to permit Lloyd to install grab bars, a shower seat, or a patio ramp.  Rather, the Manbel Defendants informed Lloyd that they would not bear the cost.  Similarly, although Lloyd alleges that the Manbel Defendants require her to pay more rent for a two-bedroom apartment with a walk-in shower than what she pays for her current one-bedroom apartment, she does not allege that they will not rent one to her.  Lloyd also fails to explain how the FHA entitles her to an apartment with a walk-in shower on the first floor of the building.

Further, Lloyd alleges that the Manbel Defendants unlawfully denied a reasonable accommodation request when they declined to accept payments from the Emergency Rental Assistance Program ("ERAP") for her rent.  However, this too fails as Lloyd has not pled any nexus between ERAP payments and her disability.  ERAP is/was a COVID-era rental assistance program aimed at helping the economically insecure during the pandemic.  The program is wholly divorced from disability benefits.  Lloyd may have tried to *receive* ERAP payments because of her disability but that does not mean that Defendants *refused* to accept the payments because of her disability.

Accordingly, Count VI does not state a claim under the failure to modify or accommodate subsections of the FHA.[8]

### 2. Disparate Treatment/Discrimination

Lloyd's averments regarding the method in which she was made to pay her rent also blends into a disparate treatment claim.  In particular, Lloyd alleges that she was required to pay by cashier's check while non-disabled tenants were not.  However, she again fails to draw a nexus between the cashier's check requirement and her disability, merely concluding that the decision was based on a discriminatory reason.  *See Wilson v. Hillsborough Twp. Constr. Dep't*, 779 F. App'x 969, 972 (3d Cir. 2019) (affirming dismissal where complaint asserted "vague, conclusory speculations that those decisions were made for a discriminatory reason.").

For this reason, Count VI fails to state a claim for disparate treatment under the FHA.

---

[8]     Lloyd's allegations regarding the distance between the door's key-fob pad and the entrance is concerning, but it is unclear from the allegations whether the packages are what caused the issue and whether Lloyd requested any accommodations be made to address the deficiency.  Moreover, the fact that Lloyd apparently used the entrance or had another accessible entrance is implied from the fact that she lived in her apartment for approximately ten months. The allegations in this regard are therefore insufficient.

### 3.    Hostile Housing Environment

Lloyd alleges that after she complained to the Manbel Defendants, they permitted other

residents to harass her by "throwing objects towards [her] bedroom windows late at night,

coming onto [her] patio and looking into [her] windows, recording [her] inside her unit, etc."

Am. Compl. ¶¶ 85, 88.  Lloyd contends that her neighbors allow their dogs to defecate next to

her handicap ramp, do not pick up the dog feces, and that Defendants allow this behavior.  *Id.*

Lloyd made several police reports regarding the alleged criminal activity, but no criminal

charges were ever filed.  *See id.* ¶ 86.  These contentions could be construed as alleging a hostile

housing environment claim.[9]

Nevertheless, the allegations are insufficient to show that the alleged harassment was

sufficiently severe and persuasive.  *See Glagola*, 2023 U.S. Dist. LEXIS 197607, at *9

(concluding that the plaintiff's allegations that she was repeatedly followed, ridiculed, and

harassed by neighbors and security guards, as well as allegations that she was threatened with

sexual and/or physical assault by no less than three specific people did not constitute "severe and

pervasive" harassment, as required to state hostile housing environment claim).  Consequently,

Count VI does not state a hostile housing environment claim under the FHA.

### 4.    FHA retaliation

Lloyd concludes that she was retaliated against for complaining about the property and

alleges that her complaints were the reason her lease was not renewed.  However, many of her

---

[9]      *See Doe v. Univ. of Scranton*, No. 3:19-CV-01486, 2020 U.S. Dist. LEXIS 187526, at
*23 n.113 (M.D. Pa. Oct. 9, 2020) (citing *D.K. v. Teams*, 260 F. Supp. 3d 334, 366-67 (S.D.N.Y.
2017) ("District courts in this circuit have read § 3604 to prohibit the creation of a hostile
environment by individuals who have control or authority over the terms, conditions, or
privileges of sale or rental of a dwelling, similar to the prohibition imposed by Title VII against
the creation of a hostile work environment." (internal quotations omitted))).

complaints were not protected activity, including, but not limited to, Lloyd's complaints about where her neighbors walk their dogs, about the dog feces and trash around the property, about persons smoking outside, about hearing her neighbors inside their apartments, and about the chemicals used by the landscapers. Lloyd's allegations of constructive eviction based on these issues is not adverse activity. Moreover, although Lloyd alleges that her lease was not renewed because of these complaints, along with her other complaints about the property, she fails to establish the requisite causal connection. Lloyd began complaining about the property the same day she moved in (April 2022) and she chose to move out of her apartment ten months later (February 2023) prior to the expiration of her lease. Lloyd's suggestion that thereafter her lease was not renewed because of her protected activity is speculative at best and fails to state a claim. *See Newell*, 2016 U.S. Dist. LEXIS 13416, at *21-22 (finding that the plaintiff failed to demonstrate a prima facie case of retaliation by failing to show that a causal link existed between the protected activity and her termination). *Accord Stefan v. Vermillion*, No. 04-4923, 2006 U.S. Dist. LEXIS 109237, at *12-13 (E.D. Pa. Nov. 28, 2006) (determining that the plaintiffs had proffered enough evidence to make out a prima facie case of retaliatory eviction based on the two-week time between the plaintiffs' request for modifications and the first eviction notice).

Accordingly, Count VI is insufficient to state a FHA retaliation claim.

Although the Court questions whether Lloyd will be able to plead a cognizable FHA claim under one or all of the theories just discussed, it will, in an abundance of caution, allow leave to amend to correct the deficiencies in her FHA claims that have been identified herein.

**B.     The ADA claims are dismissed with prejudice.**

Lloyd asserts claims arising under Titles III and V of the ADA.

### 1.    Apartment Complex Violations

Lloyd alleges several ADA violations around the complex, namely that: 1) the handicap

parking spaces are insufficient; 2) the complex lacks sufficient handicap units for the hearing and

visually impaired; 3) the front door is inaccessible; and 4) the sidewalks are not conducive to the

handicapped.  Lloyd seeks monetary damages and injunctive relief.

Since Title III of the Act does not permit private plaintiffs to obtain monetary damages,

her claim for such fails.  *See Reviello v. Philadelphia Fed. Credit Union*, No. 12-508, 2012 WL

2196320 at *4 (E.D. Pa. June 14, 2012).  A private party may, however, seek injunctive relief.[10]

*See Mahoney v. Waldameer Park, Inc*., No. CV 20-3960, 2021 WL 1193240 * 4 (E.D. Pa. Mar.

30, 2021).  Nevertheless, Lloyd's ADA claim fails because apartment complexes[11] are not places

of public accommodation for the purposes of Title III.  *See El*, 315 F. Supp. 3d at 844; *see also*

*Regents of Mercersburg Coll. v. Republic Franklin Ins. Co*., 458 F.3d 159, 165 n.8 (3d Cir.

2006) ("We agree that residential facilities such as apartments and condominiums are not

transient lodging and, therefore, not subject to ADA compliance.)  Nor does the Manbel

Defendants' acceptance of government rent vouchers bring the claim the ambit of Title III.  *See*

---

[10]    It appears that Lloyd does not have standing to seek injunctive relief.  Relevant here is
whether Lloyd has suffered an injury-in-fact.  Courts in this district "have used the four-part test
to determine whether a plaintiff has alleged a concrete and particularized injury that is capable of
repetition. That test consists of the following factors: (1) the plaintiff's proximity to the
defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the
definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel."
*Harty v. Burlington Coat Factory of Pennsylvania, L.L.C.*, No. CIV.A. 11-01923, 2011 WL
2415169, at *4 (E.D. Pa. June 16, 2011).  Lloyd no longer lives at this apartment complex and
has pled no facts to suggest she might return. *But see* Am. Compl. ¶ 99.
[11]    Although the shopping center is a place of public accommodation, Lloyd's complaint that
there is not a sidewalk connecting the shopping center to the apartment complex fails to state a
claim because there is no duty to provide safe passage to persons to/from a place of public
accommodation.  *See, e.g. Stetler v. Piecyk*, 61 Pa. D. & C.4th 181, 185-86 (C.P. 2002)
(concluding that "a private school has no duty to provide a safe means of crossing a public street
[because] . . . the child is beyond the school's property").

*Samuel v. Delaware Cnty. Hous. Auth.*, No. CV 22-2451, 2023 WL 4494163, at *9 (E.D. Pa.

July 11, 2023) (dismissing the ADA claim with prejudice because the defendant's apartment

building, regardless of whether it accepts federal funds in the form of housing vouchers, is not a

public accommodation within the meaning of the ADA); *Mahdi Sufi El v. People's Emergency*

*Ctr.*, 315 F. Supp. 3d 837, 844 (E.D. Pa. 2018) ("For purposes of Title III, apartments and

condominiums do not constitute public accommodations, even where the property accepts

tenants receiving federal housing subsidies." (internal quotations and citations omitted)).

Accordingly, Lloyd's claims arising under Title III of the ADA are dismissed with prejudice.[12]

### 2.    Retaliation

Lloyd also notes "Title V" of the ADA, which is the Act's retaliation provision.  *See* 42

U.S.C. § 12203(a).  Lloyd's retaliation claim is as follows: "Defendants have violated Title V by

retaliation against Lloyd by letting other people throw object towards Lloyds [sic] bedroom

window and look into Lloyds [sic] windows at nighttime, by telling Lloyd she has to pay for any

grass damage outside of her unit even though Lloyd never damaged it."  Am. Compl. ¶ 93.

Elsewhere Lloyd claims that the Manbel Defendants retaliated against her for complaining about

such conduct by refusing to renew her lease.  However, because Lloyd's complaint did not

oppose an act or practice made unlawful by the ADA, she cannot state a claim for retaliation

under the ADA.  *See Mahdi Sufi El v. People's Emergency Ctr.*, 438 F. Supp. 3d 283, 292 (E.D.

Pa. 2020) (dismissing the ADA retaliation claim because the plaintiff, who complained about

---

[12]    *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile"); *Sanders v. Mizzanti Real Estate*, No. 23-285, 2023 U.S. Dist. LEXIS 66895, at *7-8 (W.D. Pa. Apr. 17, 2023) (concluding that amendment of the ADA claim would be futile because the plaintiffs did not allege that the house they were renting was a place of public accommodation).

discriminatory eviction/refusal to rent to him, had not engaged in protected activity where the

residential facilities were not covered by the ADA).  Lloyd's claims arising under Title V of the

ADA are therefore dismissed with prejudice.[13]

### C.      Other FHA and ADA claims.

Lloyd's averments are a broad, sweeping host of complaints into her FHA and ADA

claims.  The two most recurring complaints relate to the apartment complex's smoke-free

addendum and the landscaper's use of certain airborne chemicals.  However, an aggravation of

Lloyd's disability, without discrimination on the basis of her disability, is not cognizable under

the ADA or FHA.

The crux of the smoking claim appears to be as follows.  In choosing where to live, Lloyd

relied on Defendants' representations that the apartment complex was smoke free.  Additionally,

Lloyd signed a smoke free addendum to her lease which prohibited smoking in outdoor common

areas.  Nevertheless, the apartment complex permits tenants and outside contractors to smoke in

common areas, thereby exacerbating Lloyd's disability.  Lloyd suggests that the Manbel

Defendants, by falsely advertising a smoke-free environment, discriminated against her based on

her disability.  However, these allegations offer nothing more than conclusory claims of

discrimination, which are contradicted by the fact that the smoking condition existed throughout

the complex, and do not state a violation of the ADA or FHA.  Lloyd's suggestion that the ADA

and/or FHA insulates her from general aggravation to her disability is without merit.  *See Rosado*

*v. Whitcraft*, No. 23-CV-3717, 2023 U.S. Dist. LEXIS 224332, at \*19-20 (E.D. Pa. Dec. 15,

2023) ("'The Fair Housing Act does not, however, create some general federal cause of action

governing landlord-tenant disputes. Thus, it is not enough for a plaintiff to merely describe a

---

[13]      *See* footnote 12

series of housing maintenance concerns in her complaint to state a claim under the FHA.

Instead, the plaintiff must plead some facts that plausibly link these housing maintenance

concerns or dissatisfaction with landlord-tenant proceedings' to discrimination." (quoting

*Palencar v. Raijski*, No. 3:15-CV-1189, 2016 WL 6908116, at *5 (M.D. Pa. Nov. 9, 2016),

*report and recommendation adopted*, 2016 WL 6892841 (M.D. Pa. Nov. 23, 2016))).

Lloyd's claim regarding the landscapers fares no better. Lloyd avers that the Manbel

Defendants hired landscapers that applied pesticides and other chemicals around the complex

and directly outside of Lloyd's unit, which exacerbated her disability and injured her service dog.

However, Lloyd has failed to articulate any particular theory of liability under the FHA or ADA.

Moreover, these allegations offer nothing more than conclusory claims of discrimination, which

are unsupported by the facts because the chemicals were sprayed throughout the complex.

Lloyd's complaints about the landscapers and chemicals therefore fail to state a claim under the

ADA or FHA. *See Rosado*, 2023 U.S. Dist. LEXIS 224332, at *19-20.

>    **D.**    **Lloyd may file an amended complaint.**

The ADA claims are dismissed with prejudice, but the FHA claims are dismissed without

prejudice. As previously mentioned, this Court questions whether Lloyd will be able to plead a

cognizable FHA claim, but will nevertheless allow her leave to amend to the FHA claim. In

addition to allowing leave to amend the FHA claims, Lloyd may also amend her state-law

claims.[14] In preparing a second amended complaint, Lloyd is directed to review the motions to

---

[14]    Defendants Lancaster County Housing Authority and Defendants Benjamin Novak, and
Fowler, Hirtzel, McNulty and Spaulding also filed motions to dismiss. *See* ECF Nos. 53-54.
Since these motions regard the state-law claims brought pursuant to the court's supplemental
jurisdiction and all federal claims are being dismissed, the motions need not be decided at this
time. In the event Lloyd files a second amended complaint, the remaining motions to dismiss
will become moot and new motions to dismiss may be filed. If, however, Lloyd chooses not to
file a second amended complaint, the Court intends to issue an order declining supplemental

dismiss the state-law claims and to include any necessary amendments to those claims.  If those claims are subsequently dismissed for reasons alleged in the motions to dismiss, Lloyd will not be given further leave to amend after dismissal.

Lloyd is advised that the "amended complaint must be complete in all respects." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992).  It must be a new pleading which stands by itself without reference to the original or first amended complaint.  *Id.*  The second amended complaint must include specific factual allegations as to each of the Defendants and each of the elements of each claim.  It "may not contain conclusory allegations[; r]ather, it must establish the existence of specific actions by the defendants which have resulted in constitutional deprivations." *Id.* (citing *Rizzo v. Goode*, 423 U.S. 362 (1976)).  "The amended complaint must be 'simple, concise, and direct' as required by the Federal Rules of Civil Procedure." *Id.* (citing Fed. R. Civ. P. 8(e)(1)).

Lloyd's Amended Complaint is far from simple, far from concise, and far from direct. *See* footnote 5, *supra*.  Rather, it is more than one hundred twenty (120) pages in length and includes numerous rambling paragraphs containing conclusory statements and multiple factual allegations in each.  For example,[15] paragraph 13 begins on page twenty-six and continues until page thirty-two.  The numbering in the Amended Complaint is also incorrect.  For example, after the seven-page paragraph 13 just mentioned, the next numbered paragraph is 15, followed by paragraph 25, then paragraph 16.  The Amended Complaint also repeats paragraph numbers.  For

---

jurisdiction over the state-law claims. *See Amiri v. Gelman Mgmt. Co.*, 734 F. Supp. 2d 1, 3-4 (D.D.C. 2010) (concluding that the plaintiff's bare assertions of discrimination are not sufficient to state a civil rights claim to establish jurisdiction under § 1331, but "instead [] a landlord and tenant dispute falling squarely within the jurisdiction of the District of Columbia courts").  Lloyd will then have thirty days to file the state law claims in state court. *See* 28 U.S.C. § 1367(d).

[15]     The Amended Complaint is fraught with examples, not all of which are discussed herein.

example, the first paragraph 15 is on pages four (4) to five (5) and the second paragraph 15 runs

from pages thirty-two (32) through forty-two (42). In its current form, although the Amended

Complaint puts the Defendants on notice of Lloyd's claims, it would be difficult for them to

Answer the Amended Complaint. Lloyd is advised that her second amended complaint must

include sequentially numbered paragraphs that each contain simple, precise factual allegations.

## V.      CONCLUSION

Lloyd's complaints are largely landlord-tenant disputes unconnected to her disability.

She has failed to show that the Manbel Defendants failed to accommodate any reasonable

housing modification requests and offers little more than conclusory allegations that the Manbel

Defendants discriminated against her on account of her disability and/or retaliated against her

based on protected activity. For these reasons and because the Eclipse at Belmont is not a place

of public accommodation within the meaning of the ADA, Lloyd has also failed to state an ADA

claim. The ADA claims are dismissed with prejudice, while the FHA claims are dismissed

without prejudice. Since Lloyd is granted leave to amend the FHA claim, the remaining motions

to dismiss are dismissed with leave to refile after a second amended complaint. Of note, if Lloyd

fails to file a second amended complaint or if she does but the FHA claim is again dismissed, the

Court intends not to exercise supplemental jurisdiction over the state-law claims.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge