UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| SUSAN LLOYD, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:23-cv-2261 |
| | : | |
| MANBEL DEVCO I LP. *et al.*, | : | |
| Defendants. | : | |

_____

**O P I N I O N**
**Motion to Dismiss by Law Firm Defendants,[1] ECF No. 71- Granted**
**Motion to Dismiss by LCHA,[2] ECF No. 74- Granted**
**Motion to Dismiss by Manbel defendants,[3] ECF No. 75- Granted in part, Denied in part**
**Motion to Dismiss by Greenscapes,[4] ECF No. 83- Granted**
**Plaintiff's Motions to Amend and to Strike, ECF Nos. 76, 78, 79, 85, 86- Denied**

**Joseph F. Leeson, Jr.**                                          **March 4, 2025**
**United States District Judge**


## I.    INTRODUCTION

The instant litigation arises out of the problems perceived by tenant Susan Lloyd while a

resident at the Eclipse at Belmont Apartments.  Unhappy with the realities of apartment living,

Lloyd complains about, *inter alia*, other tenants and their dogs, pesticides, rental payments, and

handicap accessibility at the Eclipse.  The owner of the Eclipse and two of its employees are

named as defendants in Lloyd's claim under the Fair Housing Act ("FHA").  This claim may not

survive summary judgment for the reasons set forth below, but at this early stage of the

---

[1]     The "law firm defendants" include Benjamin Novak, Esq. and Fowler Hirtzel McNulty &
Spaulding LLC.
[2]     Defendant Lancaster County Housing Authority ("LCHA")
[3]     The "Manbel defendants" include Manbel Devco III, LP, d/b/a Eclipse at Belmont
("Manbel"), Audrey Caleca, and Caroline Schompert.
[4]     Defendant Greenscapes Landscape Construction, LLC ("Greenscapes")

proceedings a few of Lloyd's allegations are sufficient to state a cause of action.  She has also managed to state a claim against these defendants for negligence and a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL").  Her remaining allegations against these defendants, as well as its landscaping company and attorneys, and the LCHA are dismissed with prejudice for failure to state a claim.

## II.    BACKGROUND

### A.    Procedural History

Lloyd initiated the above-captioned action based on federal question jurisdiction on June 12, 2023,[5] against the following defendants: (1) Manbel Devco III LP, the owner and developer of the Eclipse at Belmont Apartments, (2) Audrey Caleca, leasing agent for Manbel Devco III LP, (3) Caroline Schompert, the property manager for Manbel Devco III LP, (4-5) Benjamin Novak, Esq. and the law firm Fowler Hirtzel McNulty & Spaulding LLC, the legal representation for Manbel Devco III LP, (6) Greenscapes Landscape Construction LLC, which was contracted by Manbel Devco III LP to landscape/maintain the property, and (7) the

---

[5]    On September 6, 2022, Lloyd filed a pro se civil complaint in the Lancaster County Court of Common Pleas against the Manbel defendants, the LCHA, and a different landscaping company.  *See* State Complaint, ECF No. 72-1 at Ex. A; State Docket, ECF No. 72-1 at Ex. B. That complaint contained substantially similar factual allegations and claims.  The law firm defendants entered their appearance on behalf of the Manbel defendants and filed preliminary objections to the state complaint.  *See id.*  A few days later, the law firm defendants requested a case management order and Lloyd filed a request for an emergency injunction.  *See id.*  A hearing was held on November 1, 2022, before Judge Sponaugle.  The same day, Judge Sponaugle issued orders granting the request for a case management order that stayed discovery pending disposition of the preliminary objections, and denying Lloyd's request for injunctive relief.  *See id.*; Injunction Order, Ex. G, ECF No. 75-3.  In the Order denying injunctive relief, Defendants were ordered, in the event Lloyd vacated the residence prior to the end of her lease on April 9, 2023, to return the balance of any prepaid rent to Lloyd, along with the balance of her security deposit.  *See id.*  A few weeks after the injunction hearing, an attorney entered an appearance on behalf of Lloyd and filed a praecipe to withdraw the complaint.  *See* State Docket. Lloyd filed a petition for review in Pennsylvania's Commonwealth Court, which was denied as moot because the complaint was withdrawn. *See* State Docket, ECF No. 72-1 at Ex. F.

Lancaster County Housing Authority, which processes ERAP[6] payments. *See* SAC 2,[7] ECF No. 66. After an amended complaint and second round of motions to dismiss, this Court dismissed all federal claims and deferred addressing the state law claims based on an express intent not to exercise supplemental jurisdiction. *See* ECF Nos. 59-60 (Opinion and Order dated February 27, 2024). Lloyd's claims under the Americans With Disabilities Act ("ADA") were dismissed with prejudice, while her FHA claims were dismissed without prejudice and with leave to amend. *See id.* Although the state-law claims were not addressed by the Court, Lloyd was advised to closely review the motions to dismiss and to include any amendments to the state-law claims because further leave to amend would be denied. *See* Opn. 18-19, ECF No. 59.

Lloyd filed a Second Amended Complaint ("SAC") asserting the following causes of action. Under headings[8] "I" and "II", Lloyd alleges fraud against the Manbel defendants through false statements and misrepresentations. *See* SAC 9-26, 33-43. In "Count I", Lloyd asserts fraud against LCHA. *See id.* at 26-33. In "Count II", Lloyd asserts negligent and/or fraudulent misrepresentation against the LCHA. *See id.* at 43-46. Under heading "III", Lloyd asserts violations of the UTPCPL against Manbel and the LCHA. *See id.* at 46-54. In "Count IV," Lloyd asserts negligence and gross negligence against the Manbel defendants. *Id.* at 54-58, 60-66. In "Count IV," Lloyd asserts negligence and gross negligence against Greenscapes. *See id.* at 58-60. Under heading "V," Lloyd alleges public and private nuisance against the Manbel defendants and Greenscapes. *See id.* at 68-74. Under heading "VI", Lloyd asserts an FHA and

---

[6]     Emergency Rental Assistance Program ("ERAP")

[7]     Because many of the paragraph numbers in the Second Amended Complaint ("SAC") continue for several pages, this Court instead cites to page numbers, using the page numbers assigned by the court's electronic filing system.

[8]     The SAC is inconsistent in the labeling of the different causes of action, not all of which are identified as "count."

Rehabilitation Act ("RA") violation against the Manbel defendants. *See id.* at 74-97. In heading "VII", Lloyd asserts abuse of process against Manbel and the law firm defendants. *See id.* at 98-108. In heading "VIII," which is out of order in the SAC, Lloyd alleges intentional and/or negligent inflictions of emotional distress against Manbel. *Id.* at 110-113. Under the first heading "IX," Lloyd asserts a claim for constructive eviction, without specifying a defendant. *Id.* at 108-109. Under heading "X," Lloyd alleges breach of contract and unjust enrichment against Manbel *Id.* at 109-110. Under the second heading "IX," Lloyd claims a violation of Pennsylvania's hypersensitivity law by Manbel and Greenscapes. *Id.* at 113-114. In heading "X," Lloyd asserts a violation of Pennsylvania's Human Relations Act ("PHRA") against the Manbel defendants. *Id.* at 114-115. Under heading "XI," Lloyd asserts a breach of warranty of habitability against the Manbel defendants. *Id.* at 115.

The Manbel defendants, the law firm defendants, Greenscapes, and the LCHA each filed a motion to dismiss with supporting briefs. *See* Manbel Mem. ECF No. 75-2; Law Firm Mem., ECF No. 72; LCHA Mem., ECF No. 74-1; Greenscapes Mem., ECF No. 83-1. Lloyd filed opposition briefs in response. *See* ECF Nos. 76, 78-79, 85-86.[9] In the alternative, Lloyd seeks leave to file a third amended complaint. *See id.*

---

[9]     Lloyd also moved to strike the Motion to Dismiss filed by Greenscapes on April 18, 2024, as untimely. *See* ECF Nos. 85-86. Contrary to Lloyd's suggestion that the motion was late, Greenscapes timely complied with this Court's Order dated March 28, 2024, directing that "Defendant Greenscapes Landscaping Construction LLC shall respond to the Second Amended Complaint, ECF No. 66, no later than April 18, 2024." *See* ECF No. 73. Lloyd's motions to strike are therefore wholly without merit and are denied.

B.    **Factual Allegations**

The pertinent[10] factual allegations in the Second Amended Complaint, which is the operative pleading, are as follows:

Lloyd has heart and respiratory problems, and uses a mobility scooter. *See* SAC 8, 14. Lloyd alleges she is disabled based on "multiple ongoing medical problems including a stroke and heart problems." *Id.* at 74, 119.

In February 2022, Lloyd entered into a lease, running from April 9, 2022, through April 8, 2023, to reside at the newly constructed Eclipse at Belmont Apartments. *See id.* at 7, 119. Her move-in date was April 8, 2022. *Id.* Before she was the keys to her apartment, Lloyd's complaints giving rise to the instant action began. *See id.* Her complaints generally fall into the following categories: (1) ERAP[11] and lease payments; (2) smoke-free community; (3) use of chemical pesticides; (4) handicap accessibility; and (5) security and other tenants. *See generally id.* The allegations are only summarized in this section, but will be discussed in the analysis of

---

[10]    Lloyd's 133-page SAC contains numerous allegations that are conclusory, do not support any viable cause of action, and/or are frivolous. *See, e.g.* SAC 64 (alleging Defendants were negligent for using rocks instead of mulch and for allowing her to move in before planting grass). Not all such allegations are mentioned herein. Additionally, Lloyd repeats many allegations throughout the SAC in support of each claim, all of which this Court has considered, even if not discussed herein.

[11]    "The Emergency Rental Assistance Program (ERAP) was created to help renters dealing with financial challenges related to the COVID-19 pandemic. For eligible households, the program offers rental and utility assistance to help Pennsylvanians avoid eviction or loss of utility service, including assistance with other housing expenses and the provision of housing stability services." *See* https://www.pa.gov/agencies/dhs/resources/erap.html#accordion-cf16549f6a-item-9e5504c869. "ERAP assistance is paid directly to the landlord or utility provider. If a landlord or utility provider does not want to participate in ERAP, a direct payment may be made to the tenant. A payment received by a tenant must be forwarded to the landlord or utility provider to reduce the tenant's obligation." *See* https://www.pa.gov/content/dam/copapwp-pagov/en/dhs/documents/erap/documents/Emergency%20Rental%20Assistance%20Program%20ERAP%20FAQs%20Public.pdf.

the individual claims below.  For each claim, Lloyd incorporates the allegations made in previous paragraphs.

First, Lloyd complains about the way the ERAP payments were processed because under the ERAP, if a landlord refuses to participate, payment should be made directly to the applicant, but it was not.  Additionally, she was not able to use ERAP payments because the Manbel defendants required Lloyd to pay the full yearly lease amount up front even though her lease provided for monthly payments.  *See, e.g.* SAC 7, 18.  After her lease was signed, Lloyd made another application to the Manbel defendants listing ERAP as income, but the Manbel defendants never made a decision on her application.  *See id.*

Second, although the Eclipse advertised as a smoke-free community, tenants and contractors smoked in the common areas[12] and on patios and balconies.  *See id.* at 8-11.  Lloyd started complaining about the property the day she moved in, but the smoking continued until she vacated her apartment in February 2023 because the landlord failed to cure these issues.  *See id.* at 7-13.  Lloyd's medical issues made her hypersensitive to the smoke, as well as the pesticide chemicals sprayed by the landscaping company, and precluded her from opening her windows. *See id.* at 20.

Third, Lloyd was on Pennsylvania's hypersensitivity list, but did not receive "proper" notice before the landscapers sprayed.  *See id.* at 74.  The landscapers, who were not licensed, also sprayed very close to her building.  *See id.* at 20.

Fourth, Lloyd cannot access the front door on her mobility scooter because there is insufficient time to enter a code on the electronic keypad and then ride to the door before it relocks.  *See id.* at 14.  This door is often blocked with packages.  *See id.*  The sidewalks were

---

[12]     Lloyd alleges that the entire community is a "common area."  SAC 11.

blocked by construction equipment. *See id.* It took two months for her landlord to install a handicap ramp on her back patio, but Lloyd was unable to use the ramp because the dogs of other tenants defecated on the ramp. *See id.* at 15-16, 74-75. Lloyd made numerous accommodation requests regarding the door and ramp to no avail, as well as accommodation requests pertaining to, *inter alia*, her bathroom. *See id.* at 78.

Fifth, Lloyd was harassed by other tenants. *See id.* at 16-25. Lloyd was unhappy with where these tenants parked their cars and walked their dogs, and one tenant threw something at her bedroom window late at night. *See id.* at 17, 23, 122. Lloyd felt unsafe, but her landlord removed security cameras. *See id.* at 22-23, 119.

Lloyd alleges that she was constructively evicted from her apartment and her lease was not renewed in retaliation for her repeated complaints. *See id.* at 13.[13]

## III.    LEGAL STANDARDS

### A.    Motion to Dismiss – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). This Court construes *pro se* pleadings liberally. *See Higgs v. AG of the United States*, 655 F.3d 333, 339 (3d Cir. 2011). Only if "the '[f]actual

---

[13]    Lloyd does not assert a separate retaliation claim, nor could she state such a claim because her complaints to Manbel began before she even moved it, but it was not for ten months until she was allegedly constructively evicted (in February 2023). Moreover, although she suggests retaliation when her lease was not renewed, Lloyd testified at the injunction hearing in November 2022 that she did not intend to renew her lease when it expired (in April 2023). *See* N.T. 17:24 – 18:6 (When Judge Sponaugle asked Lloyd at the injunction hearing whether she intended to leave at the end of her lease, Lloyd responded: "Absolutely. Well, yeah. Absolutely. . . . I'm actually in the process of trying to get a house.").

allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.  *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). *See also Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that "a document integral to or explicitly relied upon in the complaint may be considered" (internal quotations omitted)).  Courts may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.  *See Hedges v. United States*, 404 F.3d

744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d

Cir. 1991)).

**B.      Fair Housing Act (FHA)[14] - Review of Applicable Law**

"The Fair Housing Act ('FHA'), passed by Congress as Title VIII of the Civil Rights Act

of 1968, prohibits housing discrimination on the basis of, *inter alia*, race, gender, and national

origin." *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005).  The 1988

Fair Housing Amendments Act ("FHAA") extended the FHA's coverage to include persons with

disabilities.  *Id.*  Section 3604 of the FHA makes it unlawful to:

> [D]iscriminate against any person in the terms, conditions, or privileges of sale or
> rental of a dwelling, or in the provision of services or facilities in connection with
> such dwelling, because of a handicap of:
>       (A) that person; or
>       (B) a person residing in or intending to reside in that dwelling after it is so
>       sold, rented, or made available; or
>       (C) any person associated with that person.

42 U.S.C. § 3604(f)(2).  Section 3604 includes as discrimination:

> (A) a refusal to permit, at the expense of the handicapped person, reasonable
> modifications of existing premises occupied or to be occupied by such person if
> such modifications may be necessary to afford such person full enjoyment of the
> premises except that, in the case of a rental, the landlord may where it is reasonable
> to do so condition permission for a modification on the renter agreeing to restore
> the interior of the premises to the condition that existed before the modification,
> reasonable wear and tear excepted.
> (B) a refusal to make reasonable accommodations in rules, policies, practices, or
> services, when such accommodations may be necessary to afford such person equal
> opportunity to use and enjoy a dwelling.

---

[14]      Because the anti-discrimination and anti-retaliation provisions of the FHA and PHRA are
nearly identical, *see Fogleman v. Mercy Hosp.*, 283 F.3d 561, 564 (3d Cir. 2002), a PHRA claim
is analyzed under the same standard as an FHA claim, *see Fair Hous. Rights Ctr. v. Morgan
Props. Mgmt. Co., LLC*, No. 16-4677, 2018 U.S. Dist. LEXIS 108905, at *1 n.2 (E.D. Pa. June
29, 2018).  Similarly, a failure to accommodate claim under the PHRA is analyzed under the
framework of an FHA claim for failure to accommodate.  *See Stefan v. Vermillion*, No. 04-4923,
2006 U.S. Dist. LEXIS 109237, at *5 (E.D. Pa. Nov. 28, 2006).

*Id*. § 3604(f)(3)(A)-(B).  FHA claims tend to fall into three categories: (1) intentional discrimination/disparate treatment claims; (2) disparate impact claims; and (3) reasonable accommodation/modification claims.  *Coyne v. Holy Fam. Apartments*, No. CV 19-4583, 2020 WL 2063475, at *5 (E.D. Pa. Apr. 29, 2020).  "Generally, to prevail on a disparate treatment claim, a plaintiff must demonstrate that some discriminatory purpose was a 'motivating factor' behind the challenged action."  *Cmty. Servs., Inc*., 421 F.3d at 177 (quoting *Cmty. Hous. Tr. v. Dep't of Consumer & Regul. Affs*., 257 F. Supp. 2d 208, 225 (D.D.C. 2003)).  "[U]nder § 3604(f)(3)(B) the plaintiff bears the initial burden of showing that the requested accommodation is necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling, at which point the burden shifts to the defendant to show that the requested accommodation is unreasonable."  *Lapid-Laurel v. Zoning Bd. of Adjustment*, 284 F.3d 442, 457 (3d Cir. 2002).

Some courts have also recognized hostile housing environment claims.  To state such a claim, the harassment must be "sufficiently severe or pervasive as to interfere with: the availability, sale, rental, or use or enjoyment of a dwelling; or the terms, conditions, or privileges of the sale or rental."  *Glagola v. MacFann*, No. 2:22-cv-1263-NR-LPL, 2023 U.S. Dist. LEXIS 197607, at *9 (W.D. Pa. Nov. 3, 2023) (citations omitted).

Retaliation claims under the FHA are analyzed under the familiar *McDonnell-Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  "Under the McDonnell Douglas burden-shifting framework, as applied to FHA retaliation claims, a plaintiff must first establish a prima facie case of retaliation under Section 3617 by demonstrating: (1) that [he] engaged in a protected activity; (2) that the defendants subjected [him] to an adverse action; and (3) that a causal link existed between the protected activity and

the adverse action." *Newell v. Heritage Senior Living, LLC*, No. 12-6094, 2016 U.S. Dist. LEXIS 13416, at *21 (E.D. Pa. Feb. 3, 2016).

### C.      Rehabilitation Act (RA), Section 504 – Review of Applicable Law

"Section 504 creates a private right of action in favor of persons who allege to have been subjected to illegal discrimination based on handicap." *Strathie v. DOT*, 716 F.2d 227, 229 (3d Cir. 1983). To establish a violation of the Rehabilitation Act, a plaintiff must prove that she is (1) a 'handicapped individual' under the Act, (2) is 'otherwise qualified' for participation in the program, (3) was excluded from the program 'solely by reason of her handicap,' and (4) the program or activity in question receives federal financial assistance. *See Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1009 (3d Cir. 1995).

### D.      Fraud, false statements and misrepresentations – Review of Applicable Law

"Under Pennsylvania law, 'to establish common law fraud, a plaintiff must prove: (1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result.'" *Kee v. Zimmer, Inc.*, 871 F. Supp. 2d 405, 412 (E.D. Pa. 2012) (quoting *Colaizzi v. Beck*, 895 A.2d 36, 39 (Pa. Super. 2006)). There is a heightened pleading requirement for fraud. *See id.* "In alleging fraud. . ., a party must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), and "inject precision and some measure of substantiation into [the] allegations [of fraud] . . . . who, what, when, where, and how," *Sun Co. v. Badger Design & Constructors*, 939 F. Supp. 365, 369 (E.D. Pa. 1996).

### E.      Pennsylvania Unfair Trade Practices Act (UTPCPL) – Review of Applicable Law

"To maintain a cause of action under the Pennsylvania Unfair Trade Practices Act [73 P.S. §§ 201 *et seq.*], plaintiffs must show the essential elements of fraud: (1) material misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded by the misrepresentation; and (5) damages to the party defrauded as a proximate result." *Heller v. Shaw Indus.*, No. 95-7657, 1997 U.S. Dist. LEXIS 12399, at *65-66 (E.D. Pa. Aug. 15, 1997). A "plaintiff must plead a claim of a violation of the UTPCPL with the same specificity as a claim for common-law fraud." *Grant v. Kingswood Apartments*, No. 01-1523, 2001 U.S. Dist. LEXIS 15815, at *12 (E.D. Pa. Oct. 2, 2001).

### F.    Negligence – Review of Applicable Law

To state a claim for negligence under Pennsylvania law, a plaintiff must show: (1) the defendant owed the plaintiff a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. *Martinez v. United States*, 682 F. App'x 139, 141 (3d Cir. 2017) (citing *Pittsburgh Nat'l Bank v. Perr*, 637 A.2d 334, 336 (Pa. Super. Ct. 1994)). "Whether the defendant owed a duty of care under the first element is a question of law." *Sabric v. Martin*, 532 F. App'x 286, 289 (3d Cir. 2013) (citing *Matharu v. Muir*, 29 A.3d 375, 384 (Pa. Super. Ct. 2011)). Gross negligence "is a form of negligence where the facts support substantially more than ordinary carelessness." *See Brandow Chrysler Jeep Co. v. Datascan Techs.*, No. 06-5093, 2008 U.S. Dist. LEXIS 70118, at *15 (E.D. Pa. Sep. 17, 2008). It is an intentional tort. *See Hickenbottom v. Nassan*, No. 03-223, 2007 U.S. Dist. LEXIS 24336, at *136 (W.D. Pa. Mar. 30, 2007).

### G.    Negligent Infliction of Emotional Distress (NIED) – Review of Applicable Law

"The prima facie case of NIED contains the same elements as the prima facie case of negligence discussed above, but a plaintiff can recover only under certain 'factual scenarios.'" *Kevin C. v. Founds. Behav. Health*, 705 F. Supp. 3d 368, 393 (E.D. Pa. 2023) (quoting *Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 197-98 (Pa. Super. 2008), *aff'd*, 36 A.3d 83 (Pa. 2011)). A plaintiff "must additionally allege 'one of four elements: (1) that the [d]efendant had a contractual or fiduciary duty toward plaintiff ; (2) that plaintiff suffered a physical impact; (3) that plaintiff was in a 'zone of danger' and at risk of an immediate physical injury; or (4) that plaintiff had a contemporaneous perception of tortious injury to a close relative.'" *Moss v. Pa. State Univ.*, No. 4:22-CV-00529, 2023 U.S. Dist. LEXIS 140979, at *32-33 (M.D. Pa. Aug. 11, 2023) (quoting *Doe v. Phila. Cmty. Health Alts. Aids Task Force*, 745 A.2d 25, 27 (Pa. Super. 2000)).

## H.    Intentional Infliction Emotional Distress (IIED) - Review of Applicable Law

"Under Pennsylvania law, a claim for intentional infliction of emotional distress requires a plaintiff to establish the following elements: '(1) the conduct must be extreme or outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe.'" *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 645 (E.D. Pa. 2014) (quoting *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979)). Pennsylvania courts have been reluctant to declare conduct "outrageous," requiring that "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) (quoting *Buczek v. First Nat'l Bank*, 531 A.2d 1122, 1125 (Pa. Super. 1987)). "The extreme and outrageous character of the conduct may [also] arise from an abuse by the actor of a position, or

a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests. . . . In particular police officers, school authorities, landlords, and collecting creditors have been held liable for extreme abuse of their position." Restatement (Second) of Torts § 46 cmt. e.

## I.      Nuisance - Review of Applicable Law

"A public nuisance is 'an unreasonable interference with a right common to the general public,' such as the right to clean public water and fresh air in public spaces." *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 220 (3d Cir. 2020) (citing *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 315 (3d Cir. 1985 (quoting Restatement (Second) of Torts § 821B(1)). Public nuisance claims require an "infringement of . . . personal rights [which] must result in 'significant harm,' that is, 'harm of importance involving more than slight inconvenience." *Baptiste*, 965 F.3d at 220-221 (quoting *Hartford Penn-Cann Serv., Inc. v. Zymblosky*, 549 A.2d 208, 209 (Pa. Super. 1988); Restatement (Second) of Torts § 821F com. c). "[A] private action for a public nuisance can be maintained only by one suffering a particular loss or damage beyond that suffered by all others affected by the nuisance . . . ." *Kuhns v. City of Allentown*, 636 F. Supp. 2d 418, 435 (E.D. Pa. Mar. 31, 2009) (quoting *Edmunds v. Duff*, 124 A. 489, 492 (Pa. 1924)).

"[T]he critical difference between [public and private nuisances] . . . is not the number of persons harmed but the nature of the right affected: a public nuisance requires interference with common or *public* rights, while a private nuisance requires only interference with personal or *private* rights." *Baptiste*, 965 F.3d at 223. In *Waschak v. Moffat*, the Pennsylvania Supreme Court adopted the Restatement (First) of Torts § 822 as representative of Pennsylvania's

common law.  *See* 379 Pa. 441, 448-49 (1954).  Section 822 describes the elements of a private

nuisance claim as follows:

> The actor is liable in an action for damages for a non-trespassory invasion of another's interest in the private use and enjoyment of land if[:] (a) the [plaintiff] has property rights and privileges in respect to the use or enjoyment interfered with; and (b) the invasion is substantial; and (c) the actor's conduct is a legal cause of the invasion; and (d) the invasion is either (i) intentional and unreasonable . . . or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless or ultrahazardous conduct.

*Id.*

"There is liability for a nuisance [public or private] only to those to whom it causes

significant harm, of a kind that would be suffered by a normal person in the community. . . ."

Restat 2d of Torts, § 821F.

### J.      Abuse of Process – Review of Applicable Law

"To state a claim for abuse of process under Pennsylvania law, the plaintiff must allege

that 'the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a

purpose for which the process was not designed[,] and (3) harm has been caused to the

plaintiff.'"  *Grasso v. Katz*, No. 22-2896, 2023 U.S. App. LEXIS 18285, at *8-9 (3d Cir. July 19,

2023) (quoting *Rosen v. Am. Bank*, 627 A.2d 190, 192 (Pa. 1993)).  A "necessary element of

such a claim is that the underlying proceedings have terminated favorably to the plaintiff."

*Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 158 (3d Cir. 1988).

### K.      Breach of Contract– Review of Applicable Law

"Under Pennsylvania law, three elements are necessary to plead a cause of action for

breach of contract: (1) the existence of a contract, including its essential terms[;] (2) a breach of

the contract; and[ ] (3) resultant damages."  *See Doe v. Univ. of the Scis.*, 961 F.3d 203, 211 (3d

Cir. 2020) (cleaned up).  A "contract is formed when the parties (1) reach a mutual

understanding, (2) exchange consideration, and (3) delineate the terms of the bargain with

sufficient clarity." *Tuff Wrap Installations Inc. v. Cleanwrap, Inc.*, No. 11-2576, 2011 U.S. Dist.

LEXIS 70543, at *18 (E.D. Pa. June 29, 2011) (citing *Weavertown Transport Leasing, Inc. v.*

*Moran*, 834 A.2d 1169, 1172 (Pa. Super. 2003)).

### L.    Unjust Enrichment – Review of Applicable Law

The elements of unjust enrichment are: (1) benefits conferred upon defendant by plaintiff;

(2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits

under such circumstances that it would be inequitable for defendant to retain the benefit without

payment of value." *Harry Miller Corp. v. Mancuso Chems. Ltd.*, 469 F. Supp. 2d 303, 319 (E.D.

Pa. 2007) (citing *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999)).  "[T]he most

significant element of the doctrine is whether the enrichment of the defendant is unjust.  The

doctrine does not apply simply because the defendant may have benefited as a result of the

actions of the plaintiff."  *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. Ct. 1993).  A "claimant

must show that the party against whom recovery is sought either 'wrongfully secured or

passively received a benefit that it would be unconscionable for her to retain.'"  *Torchia ex rel.*

*Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. 1985) (quoting *Roman Mosaic & Tile Co. v.*

*Vollrath*, 313 A.2d 305, 307 (Pa. Super. 1973).  *See also Whitaker v. Herr Foods, Inc.*, 198 F.

Supp. 3d 476, 492-93 (E.D. Pa. 2016).  "[T]he essence of the doctrine of unjust enrichment is

that there is no direct relationship between the parties."  *Gee v. Eberle*, 420 A.2d 1050, 1060 (Pa.

Super. 1980); *Benefit Tr. Life Ins. Co. v. Union Nat'l Bank*, 776 F.2d 1174, 1177 (3d Cir. 1985)

(quoting *Gee*, 420 A.2d at 1060).

### M.    Breach of Warranty of Habitability – Review of Applicable Law

"In Pennsylvania, it is well-settled that landlords owe a duty to protect tenants from injury or loss arising out of a negligent failure to maintain a rental property in a safe condition." *N'Jai v. Bentz*, No. 13-1212, 2016 U.S. Dist. LEXIS 177157, at *24 (W.D. Pa. Dec. 22, 2016) (citing *Feld v. Merriam*, 485 A.2d 742, 745 (Pa. 1984)). To state a claim for breach of the implied warranty of habitability, "a tenant must prove he or she gave notice to the landlord of the defect or condition, that he (the landlord) had a reasonable opportunity to make the necessary repairs, and that he failed to do so." *Id.*; *Pugh v. Holmes*, 405 A.2d 897, 906 (Pa. 1979).

### N.    Constructive Eviction – Review of Applicable Law

"Under Pennsylvania law, constructive eviction occurs when a landlord deprives a tenant of the beneficial enjoyment of all or part of the leased premises in such a way as to manifest an intention to hold the premises adversely to the tenant." *W.G. Nichols, Inc. v. Ferguson*, No. 03-824, 2004 U.S. Dist. LEXIS 7331, at *53 (E.D. Pa. Apr. 21, 2004) (citing *Kuriger v. Cramer*, 498 A.2d 1331, 1338 (Pa. Super. 1985)). "[T]he interference by a landlord with the possession of his tenant or with the tenant's enjoyment of the demised premises must be of a substantial nature and so injurious to the tenant as to deprive him of the beneficial enjoyment of the demised premises, to which the tenant yields, abandoning possession within a reasonable time." *Lindstrom v. Pennswood Vill.*, 612 A.2d 1048, 1052 n.2 (Pa. Super. 1992). Possession must be given up entirely by the tenant in consequence of the landlord's acts." *See* 49 Am.Jur.2d §§ 302, 303; *Sears, Roebuck & Co. v. 69th St. Retail Mall, L.P.*, 126 A.3d 959, 968 (Pa. Super. 2015).

## IV.    ANALYSIS

### A.    Lloyd has stated an FHA, RA, and PHRA claim against the Manbel defendants on limited theories.

Under heading "VI,"[15] Lloyd asserts a claim against the Manbel defendants under the

ADA, section 504 of the RA, and the FHA.  *See* SAC 74-97.[16]  The ADA claim was previously

dismissed with prejudice and will therefore not be discussed herein.  *See* Opn. 14-17.[17]

---

[15]    This Opinion's analysis begins with heading "VI" because this Court previously expressed its intent not to exercise supplemental jurisdiction if Lloyd failed to state a federal claim.  *See* ECF Nos. 59-60 (Opinion and Order dated February 27, 2024).

[16]    In this claim, Lloyd complains generally about the accessibility of the Eclipse. Specifically, the front entrance is not accessible because there is insufficient time after entering a code in the electronic keypad to get back to the door before it relocks.  *See* SAC 74.  It is almost impossible for Lloyd to exit the building on a mobility scooter because she would "have to be able to stretch, turn, and be very mobile in order to use [her] legs to prop open the door."  *See id.* at 75.  Two months into her tenancy, the Manbel defendants installed a handicap ramp so she could enter and exit her apartment through her back patio.  *See id.*  Lloyd complains, however, that the Manbel defendants "allowed" other tenants' dogs to defecate and urinate on the ramp making it unusable without tracking feces in her apartment.  *See id.*  Lloyd sent numerous reasonable accommodation requests regarding the ramp but nothing was done.  *See id.*  There was construction equipment and hoses on the sidewalks "daily" blocking access.  *See id.* at 80. The Manbel defendants allowed other tenants and construction workers to smoke next to her building, Lloyd's unit, and in common areas.  *See id.* at 76.  One tenant in the building smoked on the balcony.  *See id.* at 24.  Lloyd's accommodation requests regarding smoking were "ignored."  *See id.*  The Manbel defendants hired Greenscapes, which sprays chemical pesticides once a week directly outside Lloyd's unit, without "proper" notice.  *See id.* at 76, 84.  Lloyd made accommodation requests regarding the chemicals to no avail.  *See id.* at 76.  The Manbel defendants refused Lloyd's accommodation request to install a shower seat by refusing to install a shower seat and advising Lloyd that she must go out and buy one.  *See id.* at 78, 81.  Lloyd alleges the Manbel defendants "allowed" other tenants to harass Lloyd, to "look into" her windows, and to direct criminal activity at Lloyd.  *See id.* at 91, 97.  Lloyd asked the Manbel defendants to accept ERAP payments but they refused and required Lloyd to pay a year's rent up front by cashier's check even though the lease allowed for monthly payments.  *Id.* at 79.  Lloyd claims that the Manbel defendants retaliated against her for her complaints about the property by evicting her and not renewing her lease.  *See id.* at 78-79.  *But see* footnote 13, *supra*.
    Under heading "X," Lloyd asserts a violation of Pennsylvania's Human Relations Act ("PHRA") against the Manbel defendants.  *See* SAC 114-15.  This claim is based on the Manbel defendants' failure to make reasonable accommodations, violations of accessibility, and retaliation as set forth in the federal claim.  *See id.*

[17]    There are no allegations in the SAC that cause this Court to reconsider dismissal of the ADA claim with prejudice.  As explained in the Opinion dated February 27, 2024, the ADA claim was not dismissed because Lloyd failed to include sufficient allegations; rather, the claim was dismissed as a matter of law because the Eclipse is not a place of public accommodation for the purposes of Title III, which also precluded the Title V claim.  *See* Opn. 14-17.

Although this Court questions whether Lloyd's FHA, RA, and PHRA claims will survive summary judgment, the motion to dismiss these claims is denied. However, Lloyd is advised that her claims survive based on limited allegations and that many of her allegations are irrelevant to any cause of action and may not be pursued. The FHA claim is limited to failure of the Manbel defendants to make reasonable accommodations[18]/modifications as to the following: (1) failure to enforce its no-smoking policy;[19] (2) failure to make modifications to the front entrance so Lloyd could enter/exit on her mobility scooter and/or failure to ensure that the patio ramp was a usable alternative; and (3) failure to install a shower seat.

The PHRA and RA claims may proceed on these limited grounds as well. Although the SAC does not allege that the Eclipse was the recipient of federal funds,[20] which is required to state an RA claim, the Manbel defendants do not move to dismiss on this basis. Accordingly construing the pleadings liberally and at this early stage of the proceedings, the RA and PHRA accommodation claims may proceed for the same reasons as the FHA claim.

---

[18]    This Court must accept as true Lloyd's allegations in the SAC that she made accommodation requests regarding the dog waste on the ramp, making it unusable. It appears from the accommodation requests that Lloyd filed as exhibits, however, that she merely complained about dog waste next to the ramp and in front of her unit. *See* ECF Nos. 82-4, 82-5, 82-7, and 82-12. Regardless, her requests also referenced equipment blocking the sidewalks. *See* ECF No. 82-6.

[19]    Despite Lloyd's suggestion, *see* SAC 11, not every area is a common area. However, her allegations that tenants smoked on patios and balconies and "directly outside" Lloyd's unit, *see id.* at 10-11, 24, violates the Eclipse's no-smoking policy, *see* Lease at Ex. K at 554, ECF No. 75-3 (prohibiting residents and visitor's from smoking "on any porch or balcony, or in any common areas of such building or within 20 feet of any entrance"). Lloyd alleges that she was unable to open her windows because of the smoking and the Manbel defendants ignored her requests for correction. *See* SAC 24.

[20]    The Eclipse's acceptance of ERAP payments is insufficient. *See Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 264 (E.D.N.Y. 2009) (holding that an apartment complex that accepts section 8 vouchers is not a recipient of federal funds under Section 504).

Many of Lloyd's other allegations do not state a claim under the RA, PHRA, or FHA. The FHA does not create a private cause of action for every perceived violation. *See Simpson v. Harbilas*, No. 1:17-cv-0514, 2018 U.S. Dist. LEXIS 149235, at *25 (M.D. Pa. Aug. 30, 2018) ("Statutes within the FHA such as §§ 3604 and 3617 create causes of action, but § 3601 on its own does not" (citing 42 U.S.C. § 3604 (prohibiting discrimination); 42 U.S.C. § 3617 (making it unlawful to "coerce, intimidate, threaten, or interfere . . ."))). Lloyd's allegations, including but not limited to, harassment by other tenants, ERAP payments, and use of chemical pesticides by Greenscapes do not support a failure-to-accommodate claim against the Manbel defendants as Lloyd has failed to adequately show that her accommodation requests in these regards were necessary to her enjoyment of the premises as a handicap person. Lloyd's other complaints regarding accessibility accommodations lack merit for the reasons discussed in the Opinion dated February 27, 2024, which is specifically incorporated herein. *See* ECF No. 59. Finally, Lloyd's allegations of disparate treatment and retaliation are wholly conclusory and may not proceed. These claims, as well as any hostile housing environment claim, are dismissed for the same reasons discussed in the Opinion dated February 27, 2024. *See* Opn. 12-14.

**B.    The claims of fraud and misrepresentation are dismissed.**

Lloyd alleges fraud or fraudulent/negligent misrepresentations against the Manbel defendants in headings "I" and "II", *see* SAC 9-26, 33-43, and against the LCHA in "Count I" and "Count II," *see id.* at 26-33, 43-46.[21]

---

[21]    In support of these claims, Lloyd alleges that the Eclipse was advertised as a smoke-free community and as being constructed from noise-dampening concrete. *See* SAC 8-13. Lloyd alleges that these advertisements were false, as were the Manbel defendants' statements to Manheim Township and Lancaster County. *See id.* Lloyd alleges that the Manbel defendants also made false statements as to being ADA/FHA compliant, preserving the wetlands, maintaining the property and streets, the price of the units, and security measures. *See id.* at 14-26, 33-43. Lloyd alleges that the Manbel defendants kept her application fee and complains that

> ### i.    LCHA

Initially, this Court finds that it lacks subject matter jurisdiction over the claims against

the LCHA.  "Federal courts are courts of limited jurisdiction. They possess only that power

authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

375, 377 (1994).  "In order to have subject matter jurisdiction, a District Court must be able to

exercise either federal question jurisdiction or diversity jurisdiction." *Lan Tu Trinh v. Office of

Records City of Phila.*, 779 F. App'x 118, 119 (3d Cir. 2019) (citing 28 U.S.C. §§ 1331-1332).

Jurisdiction, here, is based on federal question jurisdiction,[22] *see* 28 U.S.C. § 1332 ("The district

courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or

treaties of the United States."), but the federal claims are against the Manbel defendants only.[23]

The claims against the Manbel defendants arise from a landlord-tenant relationship and

allegations of disability discrimination, which is wholly unrelated to Lloyd's claims against the

---

she was required to pay the annual rent despite lease terms requiring monthly payments.  *See id.*
at 18, 36.  As to the LCHA, Lloyd alleges that the LCHA made false statements that if a landlord
refused ERAP payments, ERAP would be paid directly to the applicant, but refused to pay her
directly.  *See id.* at 27-33, 43-46.

[22]    Because the parties in the above-captioned action are all citizens of Pennsylvania, there is
no diversity jurisdiction.  *See* 28 U.S.C. § 1331 ("The district courts shall have original
jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of
$75,000, exclusive of interest and costs, and is between . . . [c]itizens of different States. . . .").

[23]    Lloyd's suggestion that this Court also has federal question jurisdiction over her ERAP
claim(s) because the ERAP is a federal program, *see* Mot. 3-4, ECF No. 78, is without merit.  A
"complaint alleging a violation of a federal statute as an element of a state cause of action, when
Congress has determined that there should be no private, federal cause of action for the violation,
does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'"
*Smith v. Indus. Valley Title Ins. Co.*, 957 F.2d 90, 95 (3d Cir. 1992) (quoting 28 U.S.C. § 1332).
"[P]rivate rights of action to enforce federal law must be created by Congress."  *Alexander v.
Sandoval*, 532 U.S. 275, 286 (2001).  Congress did not create a private cause of action under the
ERAP.  *See Jasmine v. Gainey*, No. 2:22-1114, 2022 U.S. Dist. LEXIS 143351, at *5, 7 (W.D.
Pa. Aug. 11, 2022) (holding that "[w]hile it is possible that the failure to use ERAP funds for
their intended purpose may represent a violation of federal law, no private cause of action
exists," and dismissing the complaint for lack of subject matter jurisdiction).

LCHA regarding ERAP payments.  Accordingly, this Court does not have supplemental

jurisdiction over the claims against the LCHA.  *See* 28 U.S.C. § 1367 (providing that "the district

courts shall have supplemental jurisdiction over all other claims that are so related to claims in

the action within such original jurisdiction that they form part of the same case or controversy

under Article III of the United States Constitution").

Assuming *arguendo* that this Court does have supplemental jurisdiction, the LCHA is

entitled to sovereign immunity.  *See City of Phila. v. Lead Indus. Ass'n*, 994 F.2d 112, 119 (3d

Cir. 1993) (holding that "housing authorities are agencies of the Commonwealth for purposes of

sovereign immunity"). *See also Stoner v. Arizona*, No. CV-23-01065-PHX-SMM, 2023 U.S.

Dist. LEXIS 113558, at *1 (D. Ariz. June 30, 2023) (dismissing the plaintiff's complaints of

mismanagement in the ERAP program against the state's Department of Economic Security

based on immunity).  Moreover, Lloyd has failed to state a claim.  Lloyd does not allege, nor

could she, that the LCHA knew her landlord would not accept ERAP payments directly.  Her

suggestion that the LCHA intended to induce Lloyd to apply for assistance by stating they would

pay her directly if the landlord did not accept is therefore unsupported.  This Court also questions

how Lloyd was damaged by the alleged misrepresentation if she would have never applied for

assistance absent the misrepresentation.  Her suggestion that the LCHA, which simply manages

the ERAP program, acted for its own financial gain, *see* SAC 44, is frivolous.

The claim against the LCHA is dismissed with prejudice.

### ii.    *Manbel defendants*

Lloyd's fraud claims against the Manbel defendants are also insufficient to state a claim.

The Eclipse's written no-smoking policy, even if not enforced, negates her allegation that its

advertisement in this regard was a misrepresentation.  Similarly, it is common in apartment

living to hear neighbors, noise-dampening concrete is not soundproof. As to advertisements on price, Lloyd signed a lease knowing the exact rental amount before moving in so she could not have been damaged by any alleged misrepresentation. Lloyd's allegations regarding harassment by other tenants, as well as her disagreement with other statements by the Manbel defendants, do not show misrepresentations of material fact, nor has she alleged sufficient facts to show the Manbel defendant' intended to, or did, induce action based on the same. Her allegations in this regard are conclusory and not entitled to the presumption of truth, especially given the heightened pleading requirement for fraud.

As to her allegations of fraud regarding the lease requiring monthly payments and her being required to pay the full annual lease amount up front, these allegations are barred by the gist of the action doctrine.[24] *See Bruno v. Erie Ins. Co.*, 106 A.3d 48, 53 (Pa. 2014) (explaining that the gist of the action doctrine "provides that an alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations"). Contrary to Lloyd's suggestion that her action sounds in fraud, not breach of contract because she was allegedly fraudulently induced to enter the contract believing that she could make monthly payments, *see* Manbel Opp. 10, ECF No. 79, monthly payments are what is

---

[24]     Because the claims are barred by the gist of the action doctrine, there is no need to address the Manbel defendants' argument that they are also barred by the economic loss doctrine. *See Oldcastle Precast v. VPMC, LTD.*, No. 12-6270, 2013 U.S. Dist. LEXIS 67481, at *31-32 (E.D. Pa. May 13, 2013) (determining that there was no need to decide whether the economic loss doctrine barred the tort claims because the court had already determined that such claims were barred by the gist of the action doctrine).

provided for by the contract terms so there is no fraud separate from a breach of contract claim. This claim is dismissed with prejudice.

### C. The Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") claim is dismissed as to the LCHA only.

In heading "III", Lloyd asserts violations of the UTPCPL against Manbel and the LCHA. *See* SAC 46-54.[25]

For the reasons previously discussed, the LCHA is entitled to sovereign immunity as to all tort claims, including the UTPCPL claim. The claim also fails as a matter of law as to the LCHA because "the legislature did not intend for the definition of 'person' [in the UTPCPL] to include political subdivision agencies." *See Meyer v. Cmty. Coll. of Beaver Cty.*, 93 A.3d 806, 815 (Pa. 2014). Further, even if the LCHA was subject to suit under the UTPCPL, Lloyd was neither a "purchaser" nor "lessor" of the ERAP program, which is a government-funded financial assistance program. *See Gemini Physical Therapy & Rehab. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 65 (3d Cir. 1994) (holding that the UTCPL "contemplates as the protected class only those who purchase goods or services, not those who may receive a benefit from the purchase" and that a person, even if indirectly injured, "is not a purchaser or consumer of goods or services . . . and therefore has no private right of action under the statute"); *Needle v. T Rowe Price Grp. Inc.*, 2022 U.S. Dist. LEXIS 145079, at *13-14 (E.D. Pa. Aug. 15, 2022) (dismissing UTPCPL

---

[25]    Lloyd alleges that Defendants made the false statements described in Counts I and II, which she relied upon and suffered loss of money paid to Defendants. Specifically, Lloyd alleges Manbel made false statements concerning a smoke-free community, noise-reducing construction, restrictive use of chemicals, and accessibility. *See* SAC 48-49. Lloyd complains that she had to pay Manbel a year's rent up front even though the lease allowed for monthly payments. *See id.* at 47, 50. As to the LCHA, Lloyd alleges the LCHA falsely stated that if the landlord does not accept ERAP, payment would be made directly to Lloyd. *See id.* at 47-48. However, once Manbel refused to accept payment, the LCHA did not pay her the twelve to fifteen months' rent for which she was approved. *See id.* at 51-52.

claim).  Her allegations that she "used" the services, *see, e.g.* SAC 52, is insufficient to state a

claim.  *See id.*  The UTPCPL claim is dismissed as to the LCHA.

On the other hand, Lloyd's allegations that after she signed the lease providing for

monthly rental payments, she was required to pay the full annual amount before Manbel would

give her the keys[26] is sufficient to state a claim under the UTPCPL against Manbel.  *See E.S.*

*Mgmt. v. Yingkai Gao*, 176 A.3d 859, 866 (Pa. Super. 2017) (finding a UTPCPL violation where

a landlord demanded a security deposit of double rent in addition to last month's rent contrary to

the lease that required only a security deposit consisting of one month's rent).  Manbel's motion

to dismiss the UTPCPL claim is denied.[27]

### D.    The negligence and gross negligence claim may proceed against the Manbel defendants, only, on the limited theories discussed herein.

In "Count IV," Lloyd asserts negligence and gross negligence against the Manbel

defendants and Greenscapes.  *See* SAC 54-68.[28]

---

[26]    Because Lloyd has failed to show the essential elements of a fraud based on her other allegations, as previously discussed, she also fails to state a UTPCPL claim on these other theories (no-smoking policy, noise-dampening construction, etc.).

[27]    Given the emails dated February 23, 2022, between Lloyd and Caleca showing that Lloyd knew she would need to pay a year's rent up front due to bad credit before she signed the lease, *see* Ex. D at 182, ECF No. 72-1, and the letter signed by Lloyd and Caleca, dated March 23, 2022, stating that Lloyd agrees to pay "the year up front in sum of $18,060.00 as rental for the lease terms," *see* Ex. L at 566-67, ECF No. 75-3, this claim is unlikely to survive summary judgment.  *See also* Fed. R. Civ. P. 12(c) (Judgment on the Pleadings).  However, even if this Court could consider these emails as part of the motion to dismiss, Lloyd alleges that there are additional emails in which she does not agree to pay the annual amount up front, *see* SAC 103.

[28]    Lloyd alleges that Defendants had a duty to protect her, which they breached.  As to the Manbel defendants, Lloyd alleges that the Manbel defendants were aware of criminal activity but removed all security cameras from around her unit, which led to her harassment and stalking by other tenants.  *See* SAC 55-56, 61-62.  Of note, this Court uses the terms "harassment" and "stalking" because these are the terms used by Lloyd, and does not suggest the tenants' alleged behavior satisfied the corresponding criminal statutes.  In fact, although the police were contacted by Lloyd, they did not file any criminal charges.  *See* SAC 122.  Lloyd alleges that other tenants parked outside her unit and looked into her windows, and complains about the type of blinds installed by the Manbel defendants.  *See id.* at 56, 61.

The Manbel defendants argue that the negligence claims are precluded by the economic loss doctrine. *See* Manbel Mem. 20-21, ECF No. 75-2. This doctrine bars many of Lloyd's negligence allegations because she has failed to allege any physical injury or property damage resulting therefrom. *See Royer v. Discover Fin. Servs.*, No. 22-1429, 2023 U.S. Dist. LEXIS 199494, at *24-25 (E.D. Pa. Nov. 7, 2023) ("The economic loss doctrine provides that 'no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage.'" (quoting *Excavation Techs., Inc. v. Columbia Gas Co. of Pennsylvania*, 985 A.2d 840 (Pa. 2009))). The doctrine does not bar all claims, however, as Lloyd has alleged injury relating to smoking, the use of chemical pesticides, and the unsanitary conditions created by dog waste. *See Mazur v. Milo's Kitchen, LLC*, No. 12-1011, 2013 U.S. Dist. LEXIS 89126, at *26 (W.D. Pa. May 24, 2013) (holding that the plaintiffs articulated property damage in the form of harm to their pets so as to prevent application of the economic loss doctrine as a bar to the claims). The negligence claim and this Court's discussion are therefore limited to these negligence theories.

The Manbel defendants argue that they do not have a duty. *See* Manbel Mem. 20. However, "where a landlord has leased premises to multiple tenants, it has a duty to maintain common areas under its control in a reasonably safe condition." *Temple v. McDonald's Corp.*, No. 11-7516, 2012 U.S. Dist. LEXIS 34105, at *6 (E.D. Pa. Mar. 13, 2012). "The term 'reasonably safe' has traditionally been interpreted to include physical deficiencies, health

---

Lloyd's other allegations include, but are not limited to, issues relating to smoking, that she was allowed to move in weeks before a certificate of occupancy was issued, ongoing construction, littered cigarette butts and other debris, the timing of grass planting, and dog waste next to her patio and handicap ramp. *See id.* at 57, 60-65. She further complains that the use of chemical pesticides by Manbel defendants and Greenscapes as causing injury to she and her service dog. *See id.* at 58-60, 65-66.

hazards, and structural defects." *Feld*, 485 A.2d at 750.  This Court offers no opinion at this

early stage of the proceedings as to whether the Manbel Defendants' failure to enforce the no-

smoking policy or the pet policy,[29] or to otherwise maintain the property, including the handicap

ramp, outside of Lloyd's unit, was a breach of this duty, but will permit the negligence claim to

proceed on these theories.  Considering Lloyd's allegation that she made numerous complaints to

the Manbel defendants, *see* SAC 60, the gross negligence claim may also proceed at this time on

the limited theories identified in this paragraph.

As to the negligence theory based on the use of chemical pesticides, which also applies to

Greenscapes,[30] the allegations fail to state a claim.  Lloyd's allegations show nothing more than

her personal dislike of chemical pesticides and disagreement with their application at the Eclipse,

*see, e.g.* SAC 58, 65 (alleging Defendants were negligent "by using chemicals for 'weeds' when

[there were] no weeds present" and should have considered safer alternatives, and suggesting

numerous restrictions as to where/how they should have sprayed), none of which establish

breach of any duty Defendants owed to her.  Several other allegations do not relate to any duty

owed to Lloyd.  *See id.* (alleging Greenscapes sprayed without a license, was negligent in

---

[29]    *See* Smoke Free Lease Addendum at 554, Ex. K, ECF No. 75-3 (prohibiting residents and visitor's from smoking "on any porch or balcony, or in any common areas of such building or within 20 feet of any entrance"); Rules and Regulations at 593, Ex. K, ECF No. 75-3 (". . . There is a $50.00 fine for any dog waste that has not been scooped/removed.")

[30]    Greenscapes asserts, *inter alia*, that Lloyd failed to identify what, if any, duty it, a contractor, owes to Lloyd.  Greenscapes Mem. 4, ECF No. 83-1.  However, its duty is outlined by the Restatement (Second) of Torts, which states:

> One who on behalf of the possessor of land . . . creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the . . . condition while the work is in his charge.

Restat 2d of Torts, § 384.

statements to the Department of Agriculture, and did not protect its employees).  The negligence

claim, to the extent it is based on the use of chemicals, is therefore dismissed with prejudice.

>    **E.    Lloyd fails to state a claim for nuisance against Greenscapes, Caleca, and Schompert, but may proceed against Manbel Devco III on a limited theory.**

In heading "V," Lloyd alleges public and private nuisance against the Manbel defendants

and Greenscapes.  *See* SAC 68-74.  This claim is based on, *inter alia*, the use of chemical

pesticides, smoking by tenants and contractors, dogs being walked and defecating in areas

surrounding Lloyd's unit, tenant harassment and stalking, and the date for the certificate of

occupancy, all of which were previously described herein.  *See* SAC 69-74.  To this extent, she

has failed to establish a public nuisance because "a public nuisance does not exist unless a

nuisance exists and affects the community at large and not merely the complaining parties."  *See*

*Karpiak v. Russo*, 676 A.2d 270, 274-75 (Pa. Super. 1996); *See also* Restat 2d of Torts, § 821F

cmt. d ("If normal persons in that locality would not be substantially annoyed or disturbed by the

situation, then the invasion is not a significant one, even though the idiosyncracies [sic] of the

particular plaintiff may make it unendurable to him.").  She has also failed to establish a private

nuisance on these allegations because the conditions arise in typical apartment living.  *See* Restat

2d of Torts, § 821F cmt. d ("If normal persons in that locality would not be substantially

annoyed or disturbed by the situation, then the invasion is not a significant one, even though the

idiosyncracies [sic] of the particular plaintiff may make it unendurable to him.").  Lloyd's

hypersensitivity to smoke and chemicals, causing her respiratory problems, does not change this

finding because "an individual's hypersensitivity cannot give rise to a nuisance claim."  *See*

*Tutein v. Insite Towers, LLC*, No. 12-71, 2018 U.S. Dist. LEXIS 211685, at *11 (D.V.I. Dec. 17,

2018) (holding that "because the harm must be of the kind that would be suffered by a normal

person, an individual's hypersensitivity cannot give rise to a nuisance claim" (citing Restat 2d of

Torts, § 821F)).  Rather, Lloyd's allegations show nothing more than personal inconvenience, which fail to state a claim.  *See* Restat 2d of Torts, § 821F cmt. c ("The law does not concern itself with trifles, and therefore there must be a real and appreciable invasion of the plaintiff's interests before [s]he can have an action for either a public or a private nuisance.").  Lloyd also fails to state a nuisance claim based on an allegation that the dumpsters were overflowing, *see* SAC 69, because she has failed to allege any significant harm.

However, Lloyd also asserts that contractors made "loud noise" before 6:00 A.M. and that there were constant "thick plumes" of dust in the air causing her breathing issues.  *See* SAC 70, 72.  Accepting these allegations as true and at this early stage of the proceedings, these allegations are sufficient to state a nuisance claim against Manbel only.  *See Rocks v. Allegheny Cty. Sanitary Auth.*, No. 2:21-cv-530-NR, 2022 U.S. Dist. LEXIS 82849, at *23 (W.D. Pa. May 6, 2022) (holding that allegations that of significant noise and dust from construction state plausible claims for a public nuisance); *Karpiak*, 676 A.2d at 274 ("The production of a sufficient amount of dust from a business can constitute a nuisance as long as the dust causes significant harm to the aggrieved party.").  Lloyd is nevertheless cautioned that noise and dust from contractors are to be expected in a new apartment complex so her nuisance claim may not survive summary judgment.  *See Karpiak*, 676 A.2d at 274 (affirming nonsuit at trial because the noise, which occurred during daylight hours, was "not out of character with the area").

The nuisance claim against Manbel may proceed on the limited theory discussed, but is dismissed with prejudice as to Greenscapes, Caleca, and Schompert.

**F.    The abuse of process claim is dismissed.**

Under heading "VII," Lloyd asserts abuse of process against Manbel and the law firm defendants. *See* SAC 98-108.[31]

Initially, "[i]t has long been established that statements contained in pleadings, as well as statements made in the actual trial or argument of a case, are privileged." *Post v. Mendel*, 507 A.2d 351, 353 (Pa. 1986). "This privilege sweeps broadly to protect [a]ll communications pertinent to any stage of a judicial proceeding, including not only . . . communications made in open court, but also . . . pleadings and even less formal communications such as preliminary conferences and correspondence between counsel in furtherance of the client's interest." *Schwartz v. OneWest Bank, FSB*, 614 F. App'x 80, 82-83 (3d Cir. 2015) (internal quotations and citations omitted). "[T]he privilege is absolute, meaning that, where it attaches, the declarant's intent is immaterial even if the statement is false and made with malice." *Schanne v. Addis*, 121 A.3d 942, 947 (Pa. 2015). The law firm defendants here are immune.

Even if they were not immune, Lloyd fails to state a claim for several reasons. First, the abuse of process claim, which is based largely on the conduct of the law firm defendants at the injunction hearing and in seeking to bar discovery, fails because the state-court proceedings did not terminate in Lloyd's favor. *See Access Fin. Lending Corp. v. Keystone State Mortg. Corp.*,

---

[31]     After eliminating the numerous conclusory allegations, *see* SAC 98-100 and 107-108, this claim is based on the law firm defendants withholding of information from Judge Sponaugle at an injunction hearing in November 2022, and on allegations that the landscaping companies were not licensed and received state violations. *See id.* at 99, 105. The law firm defendants also withheld documents from Judge Sponaugle regarding the lease, including emails regarding whether Lloyd agreed to pay the full annual lease amount up-front, and certificate of occupancy. *See id.* at 100, 102-03. She complains that the law firm defendants failed to respond to discovery requests, filed a motion to bar discovery, accused her of extortion and of perjury, threatened to file sanctions, and sent threatening emails. *See id.* at 100-01. Lloyd alleges the law firm defendants committed perjury by telling Judge Sponaugle the landscaping company had not sprayed for six months and did not plan to spray within thirty (30) feet of Lloyd's unit. *See id.* at 102. Lloyd also complains about Judge Sponaugle and the management/outcome of the proceedings, *see id.* at 105, but these allegations are not properly before this Court.

No. 96-191, 1996 U.S. Dist. LEXIS 14073, at *12 (W.D. Pa. Sep. 4, 1996) ("Claims for malicious use of process must be dismissed if the underlying proceedings have not been terminated in favor of the complaining party." (citing 42 Pa. C.S.A. § 8351(a)(2)). Rather, Lloyd's injunction request was denied, discovery was stayed, and the complaint was withdrawn.

Additionally, "[t]he tort of wrongful use of civil proceedings entails the initiation or continuation of an action[.] . . . The essence of the tort of wrongful use of civil proceedings is the institution of a civil action for a malicious purpose and without probable cause." *See Rosen*, 627 A.2d at 193. The law firm defendants did not initiate process; rather, they defended their clients against the proceedings initiated by Lloyd. *See id.* (affirming dismissal of the wrongful use of process claim against a lawyer for subpoenaing a witness to "give testimony in aid of execution in a legitimate and proper underlying action").

Much of the abuse of process claim is based on the law firm defendants' zealous representation of their client (filing a motion to bar discovery and arguing against Lloyd's claim/injunction request), and "parties should be afforded the opportunity to assert and defend against a properly pleaded complaint from the outset." *See Rivera-Berney v. Bradley*, No. 3:17-cv-00016, 2018 U.S. Dist. LEXIS 90065, at *3 (W.D. Pa. May 29, 2018) (explaining that "neither fairness nor economy is served in this case by circumventing civil procedures"). *See also Rosen*, 627 A.2d at 193 ("[T]he filing of preliminary objections will not support an action for wrongful use of a civil proceeding."). To the extent Lloyd alleges the law firm defendants' conduct exceeded zealous representation by perjuring themselves before Judge Sponaugle and threatening Lloyd, the allegations are conclusory and unsupported. Although Lloyd may disagree with the arguments of counsel at the injunction hearing, review of the transcript shows that counsel's statements were supported by documentary evidence and therefore not perjurious.

*See* N.T., Injunction Hearing, November 1, 2022, ECF No. 72-1 at Ex. C; *Rabuffo v. VCA*

*Smoketown Animal Hosp.*, No. 5:15-cv-06378, 2016 U.S. Dist. LEXIS 103860, at *7 n.1 (E.D.

Pa. Aug. 8, 2016) (considering a transcript attached to the motion to dismiss).  Similarly, the law

firm defendants' notice to Lloyd that they could file sanctions was notice of a permissible legal

maneuver, not an improper threat.  Lloyd's suggestion that Novak's representation was

malicious, intentional, and in bad faith, *see*  Pl. Opp. Law Firm 23, is wholly conclusory and

contrary to any reasonable understanding of the circumstances.

The abuse of process claim and the law firm defendants are dismissed with prejudice.

### G.    The IIED and NIED claims are dismissed.

In heading "VIII," Lloyd alleges intentional and/or negligent inflictions of emotional

distress against Manbel.  *See* SAC 110-113.[32]

Much of Manbel's alleged conduct did not result in physical harm or severe emotional

distress to Lloyd and does not support an IIED or NIED claim.  To the extent Lloyd does allege

severe emotional distress or injury, the connection to any alleged negligence by Mabel is tenuous

at best.  *See Toney v. Chester County Hosp.*, 36 A.3d 83, 99 (Pa. 2011) (holding that "a plaintiff

in a non-impact case faces a more difficult task of convincing a court of the legitimacy of the

emotional distress and the causal nexus between the negligent action at issue and alleged

distress").  Moreover, it was not "foreseeable that a breach of the relevant duty would result in

emotional harm so extreme that a reasonable person should not be expected to endure the

---

[32]    Lloyd alleges that Manbel failed to protect her by installing cameras but then removing
them, and by installing see-through blinds allowing her to be stalked.  *See* SAC 110-112.  She
contends that Manbel allowed other tenants to come onto her patio and to throw an object at her
window, which caused fear, anxiety, sleep loss, and rapid heartbeat  *See id.*  She also complains
about construction dust, cigarette smoke, and chemical pesticides.  *See id.* at 111.  Lloyd alleges
that Manbel denied her accommodation requests and retaliated against her for making them by
not renewing her lease.  *See id.* at 111, 113.  *But see* footnote 13, *supra.*

resulting distress," as is necessary to state an NIED claim.  *See Toney*, 36 A.3d at 84 ("NIED is

not available in garden-variety 'breach of contractual or fiduciary duty' cases. . . .").  Manbel's

conduct allegedly causing Lloyd's distress was neither extreme nor outrageous, nor an extreme

abuse of power to support an IIED claim.  *See* Restatement (Second) of Torts § 46 cmt. e (A

landlord "has not been held liable for mere insults, indignities, or annoyances that are not

extreme or outrageous."); *Suber-Aponte v. Borough of Pottstown*, No. 15-1314, 2016 U.S. Dist.

LEXIS 130197, at \*21 (E.D. Pa. Sep. 23, 2016) (explaining that "IIED claims arise only from

'the most clearly desperate and ultra extreme conduct,' such as burying a car accident victim's

body in an abandoned field (instead of notifying authorities or seeking medical assistance),

intentionally framing a plaintiff for homicide, or intentionally releasing false information that a

famous plaintiff was suffering from a fatal disease" (citing *Hoy v. Angelone*, 720 A.2d 745, 754

(Pa. 1998)).

> The IIED and NIED claims are dismissed with prejudice.

### H.    The constructive eviction claim is dismissed.

> In the first heading "IX," Lloyd asserts a claim for constructive eviction, without

specifying a defendant.  *See* SAC 108-109.[33]  Lloyd's allegations are made against "Defendants"

collectively, and she fails to identify any specific defendant in this claim.  However, a

constructive eviction claim may only be made against a landlord, Manbel here.

> "Formerly, an eviction required that the landlord enter the leased premises and physically

expel the tenant. The modern view does not require an eviction by physical force."  *Kuriger*, 498

---

[33]    Lloyd alleges she was constructively evicted two months before the expiration of her one-year lease by "Defendants" for, *inter alia*, failing to correct the smoking issues, allowing other tenants to harass and stalk Lloyd, the ongoing construction, and accessibility issues.  *See* SAC 109.

A.2d at 1338.  Nevertheless, the landlord's interference "must be of a substantial nature and so injurious to the tenant as to deprive him of the beneficial enjoyment of a part or the whole of the demised premises."  *See id.*  Manbel's alleged conduct, which consists primarily of its failure to act, does not rise to this level.  *See W.G. Nichols, Inc.*, 2004 U.S. Dist. LEXIS 7331, at *54-56 (holding that a landlord's refusal to comply with the ADA and failure to install an elevator did not evince the type of "deliberate" action required to find constructive eviction); *Wm H. McGee & Co. v. Richard I. Rubin & Co.*, No. 95-0237, 1995 U.S. Dist. LEXIS 8469, at *15 (E.D. Pa. June 20, 1995) (dismissing claim because the lessor's failure to properly maintain the property and failure to comply with applicable building codes, which resulted in a fire, was not a deliberate action rendering the premises unsuitable for the purpose for which it was leased).

This claim is dismissed with prejudice.[34]

### I.    The unjust enrichment is dismissed, but the breach of contract claim may proceed.

Under heading "X," Lloyd alleges breach of contract and unjust enrichment against Manbel.  *See* SAC 109-110.[35]

Initially, the unjust enrichment claim fails as a matter of law because Lloyd's allegations are dependent on the written lease agreement.  *See Benefit Tr. Life Ins. Co. v. Union Nat'l Bank*, 776 F.2d 1174, 1177 (3d Cir. 1985) ("The Supreme Court of Pennsylvania has concluded that 'the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship

---

[34]    Notably, Judge Sponaugle ordered that Manbel repay Lloyd for the final two months of her lease (the period of alleged constructive eviction).

[35]    In this claim, Lloyd states she entered into a lease providing for monthly rental payments, but was required to pay the full annual amount before moving in.  *See* SAC 110.  She filed a subsequent rental application on April 1, 2022, listing the ERAP payments as income, but was not reimbursed the $50.00 application fee despite not receiving a response to her application. *See id.*

between parties is founded on a written agreement or express contract.'" (quoting *Schott v. Westinghouse Electric Corp.*, 259 A.2d 443, 448 (Pa. 1969))).

As to the breach of contract claim, the Manbel defendants argue that Lloyd "willfully ignores the indisputable evidence that she entered into a written agreement to pay her entire rent up-front, as opposed to monthly." Manbel Mem. 30. They attach a letter, signed by Lloyd and Caleca, dated March 23, 2022, stating: ". . . I, Susan Lloyd as resident, agree to pay Lessor the year up front in sum of $18,060.00 as rental for the lease terms. . . ." *See* Ex. L at 566-67, ECF No. 75-3. Additionally, the Manbel defendants assert that because the balance of her rent was returned after she vacated the property, she suffered no damages. *See* Manbel Brief 30.

Although the subsequent letter-contract is revealing, the Court may not consider the exhibit on review of a motion to dismiss because it was not relied upon in the SAC, nor are Lloyd's claims based on the March letter-contract. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426; *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. Moreover, because the letter-contract post-dates the lease, it is not necessarily dispositive of Lloyd's claim that after she signed the lease, the Manbel defendants required the full lease amount.[36]

As to the suggestion that Lloyd suffered no damages because she was reimbursed for the balance of her rent when she vacated the property,[37] her damages are not limited to the return of

---

[36]    Significantly, a few days before the lease was signed, Lloyd and Caleca exchanged emails showing that Lloyd knew she would need to pay a year's rent up front due to bad credit before she signed the lease. *See* Ex. D at 182, ECF No. 72-1 (emails dated February 23, 2022). However, this Court may not consider these emails on review of a motion to dismiss because they were not mentioned in the SAC.

[37]    *See Beaman v. Bank of Am., N.A.*, No. 2:21-cv-20561 (BRM) (LDW), 2024 U.S. Dist. LEXIS 114248, at *59-60 (D.N.J. June 28, 2024) (finding that the breach of contract was rendered moot because the plaintiff had been fully reimbursed for the unauthorized transactions) (citing *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 930 (S.D. Cal. 2023) ("[A]ny Plaintiff that has been completely reimbursed can't recover contract damages, and can't state a claim for breach of contract.")).

prepaid money.  Lloyd alleges that by refusing monthly rental payments (breach), the Manbel

defendants caused her to lose ERAP payment benefits.  *See* SAC 18.  Lloyd also asserts that she

was not reimbursed her $50.00 application fee, which listed ERAP as income allegedly

satisfying the income requirements and listed a credit score satisfying the credit limit, on which

the Manbel defendants never made a decision.[38]

Lloyd has therefore pled a breach of contract claim and the motion to dismiss is denied in

this regard.

**J.      The hypersensitivity law claim fails as a matter of law.**

Under the second heading "IX," Lloyd asserts a violation of Pennsylvania's

hypersensitivity law against Manbel and Greenscapes.  *See* SAC 113.[39]

In 1995, Pennsylvania adopted the Pesticide Hypersensitivity Registry provision into the

Pennsylvania Pesticide Control Act of 1973, 3 P.S. §§ 111.21 - 112.  The provision states that the

"Department will maintain a list of individuals who have been verified as being hypersensitive to

pesticides."  7 Pa. Code § 128.111.  "Prior to a pesticide application being made by a commercial

or public pesticide application business . . . [e]ach individual listed on the current registry whose

primary residence or secondary locations property line is within 500 feet of the application site

shall be notified of the pesticide application . . . between 12 hours and 72 hours prior to the

pesticide application."  7 Pa. Code § 128.112(a).  In the event of a violation, the secretary may

after a hearing "deny, modify, suspend or revoke a license, permit or certificate issued or to be

issued pursuant to the provisions of this act if he finds that the applicant or holder has violated

---

[38]      *See* footnote 36

[39]      Lloyd alleges that she was on Pennsylvania's hypersensitivity list, but was never properly
notified of any pesticide application since moving into the Eclipse.  *See* SAC 113.

any provision of" the Pennsylvania Pesticide Control Act.  *See* 3 P.S. § 111.29.  However, there

is no private cause of action.[40]

Because there is no private cause of action, Lloyd's claim under for a violation of

Pennsylvania's hypersensitivity law fails as a matter of law.  Moreover, contrary to her

allegations in the SAC, Lloyd testified at the injunction hearing that she received notice the day

before the landscapers intended to spray, *see* N.T. 20:18-24, which is all that is required by the

hypersensitivity provisions, *see* 7 Pa. Code § 128.112(a)(3).

The claim is therefore dismissed with prejudice.

### K.    The breach of warranty of habitability claim is dismissed.

In heading "XI," Lloyd asserts breach of the implied warranty of habitability against the

Manbel defendants.  *See* SAC 115.[41]

The implied warranty of habitability "is designed to insure that a landlord will provide

facilities and services vital to the life, health, and safety of the tenant and to the use of the

premises for residential purposes."  *Pugh*, 405 A.2d at 905.  "In order to constitute a breach of

the warranty the defect must be of a nature and kind which will prevent the use of the dwelling

for its intended purpose to provide premises fit for habitation by its dwellers."  *Id.*  "Implied

warranties are generally not favored by law and are construed narrowly."  *Rhone Poulenc Rorer*

*Pharm. v. Newman Glass Works*, 112 F.3d 695, 697 (3d Cir. 1997).

---

[40]    Although judicial action for injunctive relief is permitted for a violation of another
section of the Act, that section does not apply here and the prerequisites to judicial action have
not been met.  *See* 3 Pa. Stat. Ann. §§ 111.30 – 31.

[41]    Lloyd contends the Manbel defendants failed to maintain the property, alleging
overflowing dumpsters and littered cigarette butts.  *See* SAC 115.  She further asserts that the
Manbel defendants failed to maintain the safety of the property, alleging they removed security
cameras and other tenants harassed Lloyd.  *See id.*  All of which Lloyd alleges that she notified
Manbel defendants, but nothing was done.  *See id.*

Lloyd does not suggest that her apartment was not fit for habitation; rather, her complaints are limited to conditions of the outside premises and to conduct by third parties. These outside conditions (cigarette butts on the ground and an overflowing dumpster somewhere on the property) did not prevent Lloyd from using the property, nor do they show breach.  *See Pugh*, 405 A.2d at 905; *Allaire v. United States Tr. Co.*, 478 F. Supp. 826, 828 (D.V.I. 1979) ("Because the porch itself is not vital to the use of the home for residential purposes, the alleged defect in the porch, the opening, did not violate the implied warranty of habitability."). Similarly, the allegations are insufficient to show that the Manbel defendants' removal of security cameras made the property unsafe or that Lloyd's injuries, if any,[42] were caused the Manbel defendants' alleged breach.  *See Lebbie v. Shady, L.P.*, No. 2:22-CV-1062, 2023 U.S. Dist. LEXIS 226393, at *17-18 (W.D. Pa. Dec. 20, 2023) (dismissing the plaintiffs' claim for breach of the implied warranty of habitability based on allegations that the apartment's storage unit was unsecure).

The claim is dismissed.

## V.    CONCLUSION

For the reasons set forth herein, many of Lloyd's complaints do not support any viable cause of action.  To the extent that she does state a claim, her theories are limited as discussed herein because many of her allegations are irrelevant.  This Court questions whether Lloyd will survive a motion for summary judgment, but at this early stage of the proceedings, the following

---

[42]    This Court finds the Manbel defendants' alternative argument that because Lloyd has been paid the balance of her rent she has no cognizable damages, *see* Manbel Mem. 36-37, ECF No. 75-2, to be unavailing.  *See In re Clark*, 96 B.R. 569, 577 (Bankr. E.D. Pa. 1989) (concluding that "when the warranty of habitability is breached, a tenant may recover not only for the diminished value of his or her unit, but may also recover damages for annoyance and inconvenience proven to have resulted from the breach . . . [and] for 'deprivation and humiliation'").

claims against the following defendants, only, may proceed.  The FHA, RA, PHRA claim

(heading VI) against Manbel Devco III, LP, Audrey Caleca, and Caroline Schompert; the

UTPCPL claim (heading III) against Manbel Devco III, LP only;[43] the negligence claim (Count

IV) against Manbel Devco III, LP, Audrey Caleca, and Caroline Schompert, only;[44] the nuisance

claim against Manbel Devco III, LP, only;[45] and the breach of contract claim (heading X) may

proceed.  All other claims and defendants are dismissed with prejudice.[46]

     A separate Order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*    
JOSEPH F. LEESON, JR.
United States District Judge

---

[43]    The UTPCPL claim against LCHA is dismissed.

[44]    The negligence claim against Greenscapes is dismissed.

[45]    The nuisance claim against Greenscapes, Caleca, and Schompert is dismissed.

[46]    Lloyd's requests to file a third amended complaint are denied.  Lloyd filed a first amended complaint after receipt of motions to dismiss asserting deficiencies in her claims.  She filed her second amended complaint, which is now being dismissed, after additional motions to dismiss explaining the inadequacies in her pleadings, as well this Court's Opinion explaining the deficiencies and warning that Lloyd "will not be given further leave to amend after dismissal." *See* Opn. 18-19, ECF No. 59.  Granting additional leave to amend would be both futile and inequitable.  *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that a court may deny leave to amend if a complaint is vulnerable to 12(b)(6) dismissal, if an "amendment would be inequitable or futile"); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (holding that leave to amend may be denied "based on . . . repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment").